# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JOSEPH AMATO, GARY ASHBECK, ELLEN BARFIELD, DAVID BARROWS, MICHAEL BECKER, DIANE BEENY, JOHN BEHLING, RUTH BENN, BENJAMIN BERNARD, ARUN BHALLA, KATHLEEN BURICK, DANIEL BURNS, LINNEA CAPPS, THOMAS CATCHPOLE, JOAN CAVANAGH, MARC F. CHURCH, JEFFERY J. COHEN, MARK COLVILLE, WILLIAM CONWELL, COLLEEN COOK, SUSAN CRANE, POLLY A. DAVIES, FELTON DAVIS, PATRICIA DEBRUHL, PETER DEMOTT, DEWAYNE DICKERSON, MATTHEW DIETZEN, WALTER DITMAN, LOIS A. DOGGETT, JASON DORAIS, SUSAN D'ORNELLAS, ALEXANDER HOLLEY DRUMMOND, STEVEN EKBERG, CALLA EVANS, ADAM FEINSTEIN, JAMES FLYNN, HOWARD GALE, STEPHEN GAMBOA, GABRIEL GASTER, TOBIAH GASTER, EDWARD GIBBONS, JOHN THEODORE GLICK, CHARLES GOLDBERG, OREN GOLDENBERG, DAVID GORDON, BARRETT Z. GROSS, RICHARD HARDIE, ED HEDEMANN, KATHLEEN D. HERNANDEZ, ROGER HILL, EDWARD HOTCHKISS, RYAN D. HOTTLE, JANET S. HOWE, BENJAMIN HUNT, THOMAS IVORS, JENNIFER JANNEY, DWIGHT JENKINS, MICHAEL JOSEPH, PEPPER JUDD, SARAH KANOUSE, JAY KANTOR, BRIAN KAVANAGH, KIMBERLY KERN, EDWARD F. KINANE, JOSHUA KNAPP, MATTHEW KOCEK, KATHARINE KRASSAN, LAURA KRESSLY, ANDREW LAKEN, TESSA M. LALONDE, JARED LANCTOT, JOHN LARSON, JONOTHAN LOGAN, MARIELLE LOVECCHIO, JAY MARX, RYAN MCGEE, BARBARA ANN MEISINGER, TRISTAN MIGLIORE, JOHN M. MILLER, ZACHARY C. MILLER, CHRIS G. MURRAY, MARK NECHAY, BLOSSOM NICINSKI, JAMES NOONAN, DANIEL O'REILLY-ROWE, MICHAEL PALMER, CHRISTINE PARDEW, LAWRENCE PARIS, DANIEL M. PARROTT, NATHANIEL PARRY, | THIRD AMENDED COMPLAINT  JURY TRIAL DEMANDED  05 Civ. 8453 (KMK) (JCF) |

1

JEFFREY A. PATERSON, SHANNON PETRELLO,
STEPHEN PETRICK, KATHERINE POE,
LAURA RAYMOND, BRUCE RENWICK,
ADAM RICHINS, SHANA RIGBY,
DEBORAH RIVERBEND, RAYMOND ROBINSON,
LAMBERT ROCHFORT, RONALD E. ROSENBERG,
DEVON RUECKNER, RONALD W. SAN MARCHI,
FRANK SANCHEZ III, STEVEN SCOFIELD,
ANAIS SENSIBA, GORDON WILLIAM SENSIBA,
ROBERT J. SIEGEL, SELMA SPRITZER,
ANDREW ST. LAURENT, MORA MI-OK STEPHENS,
THERESA SWINK, SARAH TEPSIC, JOHN TRINKL,
ANN TRUDELL, CHRISTY ANN TURNER,
ZACHARY VREELAND, FRANTZ WALKER,
JAMES J. WHITE, JAMES WILLIAMSON,
JAMES WILSON, TERAN WILSON,
JENNIFER WONG, MATTHEW WRIGHT,
RAISSA WU, and THOMAS ZAMBECK,

        Plaintiffs,

  -versus-

THE CITY OF NEW YORK; MICHAEL
BLOOMBERG, Mayor of the City of New York,
RAYMOND KELLY, Commissioner of the New
York City Police Department, JOHN COLGAN, Assistant
Chief of the New York City Police Department,
TERENCE MONAHAN, Assistant Chief of the New
York City Police Department, THOMAS GALATI,
STEPHEN HAMMERMAN, THOMAS DOEPFNER,
RUBY MARIN-JORDAN, KERRY SWEET, DAVID
COHEN and JOHN and JANE DOES,

        Defendants.



## PRELIMINARY STATEMENT

  1.  This is an action to vindicate the civil rights of individuals who engaged in

peaceful and lawful protest during the Republican National Convention and were arrested as a

2

result of a New York Police Department ("NYPD") policy and practice of indiscriminately arresting groups of people who were peacefully assembled on City sidewalks and who either were participating in or were in the vicinity of demonstrations.

2.  During the Republican National Convention ( the "RNC"), which was held in New York City between August 30, 2004 and September 2, 2004, the NYPD arrested more than 1,800 people in connection with peaceful protests held throughout the City. The great majority of those charges have now been dismissed. Because the NYPD adopted mass arrest tactics during the duration of the Convention – including through the use of mesh nets to enclose groups of people on sidewalks – rather than making arrests after a determination of individual probable cause, the NYPD ended up arresting many people who were engaged in lawful protest activity or who were not even demonstrators.

3.  The plaintiffs, who were arrested on Tuesday, August 31, 2004, in the vicinity of the World Trade Center site, were victims of those tactics. The false arrests followed negotiations between protest organizers and NYPD officials, who authorized a peaceful march from the area near the PATH train station entrance, across Church Street, and on the sidewalks along Fulton Street, toward Broadway, heading toward the Convention site. Plaintiffs began to march under police supervision, but the front of the march only traveled about half a block down the Fulton Street sidewalk. The group was then stopped and, without any warning, were surrounded by police officers, who enclosed them in orange mesh nets. Throughout the brief march up the Fulton Street sidewalk, plaintiffs followed all directions and instructions given by the police officers. At no time were plaintiffs advised to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to

arrest.

4. Plaintiffs were among 227 persons who were then placed under arrest, handcuffed, and taken to a former bus depot known as Pier 57, which NYPD had converted into an arrest holding facility for protestors arrested during the RNC.

5. The floor of Pier 57 was still covered with the grease, grime, and toxic chemicals resulting from its use as a bus depot. Because there were few benches on which detainees could sit or lie, plaintiffs were forced to stand during most of the many hours they were held at Pier 57 or to lie on the noxious floor.

6. Plaintiffs were finally taken on Wednesday, September 1, 2004, to the New York City criminal courts for processing. Eventually – and in many instances only as a result of court orders – people were released, with some having spent two days in police custody.

7. On October 6, 2004, the Manhattan District Attorney's office announced that it would dismiss all of the 227 prosecutions arising out of the August 31 arrests on Fulton Street.

8. THE CITY OF NEW YORK's policies and practices of (1) making mass arrests of persons lawfully participating in, or observing, demonstrations, and (2) detaining those arrested on minor offenses for prolonged periods of time in unhealthy conditions violated the federal and state constitutions and New York statutory and common law.

**JURISDICTION AND VENUE**

9. This civil rights action is authorized by 42 U.S.C. § 1983. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988. The court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343 (a)(4).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiffs' claims arise in

the Southern District of New York.

11.   This court has supplemental jurisdiction over all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

### NOTICES OF CLAIM

12.   Plaintiffs JOSEPH AMATO, ELLEN BARFIELD, DAVID BARROWS, DIANE BEENY, BENJAMIN BERNARD, KATHLEEN BURICK, DANIEL BURNS, THOMAS CATCHPOLE, MARC F. CHUCH, COLLEEN COOK, POLLY A. DAVIES, FELTON DAVIS, PATRICIA DEBRUHL, PETER DEMOTT, MATTHEW DIETZEN, WALTER DITMAN, SUSAN D'ORNELLAS, ALEXANDER HOLLEY DRUMMOND, ADAM FEINSTEIN, JAMES FLYNN, HOWARD GALE, STEPHEN GAMBOA, TOBIAH GASTER, JOHN THEODORE GLICK, DAVID GORDON, BARRET Z. GROSS, KATHLEEN D. HERNANDEZ, JANET S. HOWE, BENJAMIN HUNT, THOMAS IVORS, JENNIFER JANNEY, DWIGHT JENKINS, JOSHUA KNAPP, JONOTHAN LOGAN, MARIELLE LOVECCHIO, RYAN MCGEE, ZACHARY C. MILLER, CHRIS G. MURRAY, JAMES NOONAN, CHRISTINE PARDEW, DANIEL M. PARROTT,  KATHERINE POE, LAURA RAYMOND , BRUCE RENWICK, ANAIS SENSIBA, GORDON WILLAM SENSIBA, ROBERT J. SIEGEL, MORA MI-OK STEPHENS, JOHN TRINKL, ANN TRUDELL, CHRISTY ANN TURNER, FRANTZ WALKER, JAMES WILLIAMSON, JAMES WILSON, TERAN WILSON, and RAISSA WU filed Notices of Claim with the Comptroller of the City of New York within 90 days of the events complained of herein.  More than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

### Parties

13. Plaintiffs were unlawfully arrested on August 31, 2004 and were therafter unlawfully detained for approximately 14 to 50 hours. Plaintiffs were citizens or residents of the United States or were otherwise lawfully in the United States at the time of the events complained of herein.

14. Defendant THE CITY OF NEW YORK ( the "City") is a municipal corporation within the State of New York.

15. Defendants MICHAL BLOOMBERG, RAYMOND KELLY, JOHN COLGAN, TERENCE MONAHAN, THOMAS GALATI, STEPHEN HAMMERMAN, THOMAS DOEPFNER, RUBY MARIN- JORDAN, KERRY SWEET, DAVID COHEN and JOHN DOES were at all times relevant herein, duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a muncipal agency of defendant THE CITY OF NEW YORK. The defendants were at all relevant times acting under color of state law in the course and scope of their duties and functions as officers, agents, servants and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

**FACTS**

16. The Republican National Convention was held in New York City from August 30, 2004 to September 2, 2004.

17. THE CITY OF NEW YORK began planning for the Convention more than a year in advance. On information and belief, the City planned to make mass arrests during the

Convention without determinations of individualized probable cause, and then to hold those arrested for prolonged periods of time to prevent them from participating in other protest activity.

18.     There were approximately 1,800 RNC-related arrests, many of them mass arrests of people lawfully on public sidewalks or streets. In many instances, the police effected those arrests by deploying long orange mesh nets to enclose large numbers of law-abiding demonstrators and innocent bystanders alike.

### The Arrests at the World Trade Center Site

19.     In preparation for the RNC, defendant COHEN, who was the Deputy Commissioner for Intelligence for NYPD, directed a surveillance campaign of individuals and groups. The intelligence, and the interpretation of that intelligence, which was provided to defendants KELLY and others in the NYPD, grossly misinformed NYPD planners concerning what could be expected to occur during the RNC, and encouraged and created a climate of hostility toward protesters. COHEN improperly conflated protesters' planned activities with civil disobedience, violence, violent anarchism, and terrorism.

20.     On Tuesday, August 31, 2004, the War Resisters League and the School of the Americas Watch organized a demonstration against the policies of the Bush administration. The demonstration was supposed to begin at the World Trade Center site and proceed to near Madison Square Garden.

21.     At about 3:00 p.m., people began gathering near the World Trade Center site on Church Street, near the intersection of Fulton Street. Plaintiff HEDEMANN, an organizer with the War Resisters League, negotiated with the police department, including defendant GALATI, to allow the march.

7

22. Defendants and those under their command believed that it was the marchers' intention to proceed to the vicinity of Madison Square Garden.

23. At approximately 4:00 p.m., the march began. There were approximately 800 to 1,000 people assembled at this time. Those at the front of the march, observing the traffic signals and in cooperation with the police, crossed Church Street and proceeded eastward up Fulton Street on the north sidewalk. The march was orderly and calm. The marchers did not intend to, and they did not, block or obstruct the sidewalk. Almost immediately after the marchers crossed Church Street, and before they had gone even a full block, police halted the march.

24. Without any warning, police officers surrounded over 200 people with orange mesh nets, and arrested them all, even though they had remained on the public sidewalk, were not blocking the sidewalk, and complied with police instructions.

25. Most of those arrested were never told to disperse, and the one dispersal announcement was not followed by an opportunity to disperse. They were never told that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

26. The persons arrested included people who were participating in the demonstration, others who were there merely by chance, some who were observers, and some who were taking photographs and video footage as representatives of the media.

27. Arresting officers had no knowledge of the conduct of any individual plaintiff that served as the basis for that plaintiff's arrest.

28. Most arresting officers did not hear any order that the marchers disperse and did not observe any marchers refuse to disperse.

29. Most plaintiffs were charged with violation of Administrative Code section 10.110, Parading Without a Permit, notwithstanding that no permit is required for walking on the sidewalk and that the plaintiffs were specifically authorized by defendants to walk on the sidewalk.

30. Most plaintiffs were also charged with disorderly conduct under New York Penal Law section 240.20 (the "Disorderly Conduct Statute"), subdivisions 5 and 6.

31. As soon as many of the marchers became aware that they were being placed under arrest, they sought an opportunity to leave the area, but were prevented by defendants and officers under their command form doing so.

32. Many plaintiffs were placed in exceedingly tight handcuffs and, although they requested that they be loosened, some police officers refused to do so. Many plaintiffs remained in handcuffs for excessive periods of time.

33. Upon information and belief, officers who placed the plaintiffs in handcuffs were given no training in the proper method for doing so, nor did they have available proper tools for removal of the handcuffs.

34. Upon information belief, defendants MONAHAN and GALATI ordered this mass arrest in accordance with the mass arrest tactics developed and adopted by policymaking officials of the New York City Police department, including defendants BLOOMBERG, KELLY, COHEN, and THE CITY OF NEW YORK.

### The Detentions at Pier 57

35. The over 200 people arrested on the Fulton Street sidewalk were transported to a facility known as Pier 57. Some of the vehicles were overheated, and some plaintiffs were verbally harassed and subjected to other forms of pain and suffering. Pier 57, located on the

Hudson River at 11th Avenue and 15th Street in Manhattan, was formerly a Metropolitan Transit Authority bus depot.

36.     According to published reports, three environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety hazards, including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.  Those conditions had not been corrected by the time of plaintiffs' detention at Pier 57.

37.     Upon arrival at Pier 57, plaintiffs were searched, had their property taken, and were placed in one of the holding cells.

38.     Arresting officers met at Pier 57 with lawyers employed by and under the supervision of the Legal Bureau of the NYPD, who assisted the arresting officers in filling out an On-Line Booking Sheet ( "OLBS") for each person arrested.

39.     On information and belief, the Legal Bureau lawyers told the arresting officers to create false accounts of plaintiffs' arrests.

40.     On information and belief, defendants STEPHEN HAMMERMAN, THOMAS DOEPFNER, KERRY SWEET, and RUBY MARIN-JORDAN were responsible for the actions of the lawyers alleged in paragraphs 38 and 39, above, and knew, or should have known of those actions.

41.     There were generally not enough benches for the number of arrestees in each cell.  As a result, many plaintiffs were unable to sit or sleep for long periods of time.  Many plaintiffs who sat or lay on the floor became filthy, and some got rashes or blisters from the substance on the floor.  The air quality was also poor, and many arrestees developed coughs or had difficulty breathing.  Some plaintiffs were denied medical care and reasonable access to toilets and facilities

for cleaning themselves. At night, the facility became cold, and the detainees, who were dressed for a hot summer day in New York, were not provided with any blankets, nor was there any heat. The arrestees were offered food at sporadic times while at Pier 57, although some went many hours before receiving anything to eat.

42.     There was no fingerprinting equipment at Pier 57, and the only processing that took place there was an inventory of personal belongings. Upon information and belief, the criminal courts were available to process those being help at Pier 57, and the State of New York was processing fingerprints in a timely manner. Nonetheless, the NYPD, without justification, detained people at Pier 57 for lengthy periods of time without making any meaningful efforts to process them so they could be released. As a result of this, many people, including the plaintiffs, remained in police custody for unnecessarily lengthy periods of time.

43.     From Pier 57, the plaintiffs were transferred to a Mass Arrest Processing Center at 125 White Street and Central Booking at 100 Centre Street for processing. Some of the vehicles were overheated, and some plaintiffs were verbally harassed and subjected to other forms of pain and suffering. At Central Booking the detainees were photographed and fingerprinted, despite the fact that under New York law, fingerprinting of persons charged with violations is not authorized. The detainees were held for additional time at Central Booking before being arraigned in front of a judge or given a Desk Appearance Ticket and released from Central Booking. The duration of detention for the plaintiffs ranged from approximately 14 to 50 hours. Upon information and belief, those arrested on Fulton Street were charged with only violations such as disorderly conduct or parading without a permit.

44.     None of the plaintiffs received summonses and only a few of them received DATs.

11

45.  On October 6, 2004, the Manhattan District Attorney's office announced that it would dismiss all of the 227 prosecutions arising out of the August 31, 2004 arrest on Fulton Street.

46.  Upon information and belief, the plaintiffs' arrests, the processing of those arrests, and the conditions of their detention, as described above, including (a) the arrest of persons lawfully participating in, observing, or walking or standing in the vicinity of demonstrations, protests or other forms of public expressions during the RNC; (b) the arrest of such persons without appropriate warning and without individual probable cause; (c) the denial of summonses and DATs to such persons; (d) the requirement that such persons be fingerprinted prior to release; (d) the submission to the District Attorneys and the Criminal Court of charges that were based on knowingly false statements by arresting officers; (e) the unreasonably long detention of such persons arrested on minor charges; (f) the detention of such persons under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees; (g) the infliction of pain and suffering upon such persons, including by the use of excessive force, keeping arrestees in handcuffs for extended periods of time, applying extremely tight handcuffs, denying toilet and personal hygiene facilities and supplies, denying adequate facilities to sit or sleep, confining and transporting in over-heated vehicles, exposure to irritants, denial of adequate medical care, verbal harassment, and other means of inflicting pain and discomfort; (h) the enforcement of a facially unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; (i) the unconstitutional application of a statute, New York City Administrative Code section 10.110, Parading Without a Permit, to peaceful protest on a sidewalk; (j) the enforcement of the facially unconstitutional Disorderly Conduct Statute, subsection 5; and (h) the

unconstitutional application of the Disorderly Conduct Statute, were taken under color of law and were the result of policies and practices developed, authorized, or approved by defendants BLOOMBERG, KELLY, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, MONAHAN, GALATI and THE CITY OF NEW YORK, or were the result of the failure of those defendants to properly train and supervise police officers of the NYPD, and were undertaken for the deliberate purpose of depriving the plaintiffs of their rights, or with deliberate indifference to the deprivation of rights caused by their conduct, and causing, or with deliberate indifference to, the plaintiffs' loss of liberty and physical and emotional suffering, and were the proximate cause of the deprivation of plaintiffs' constitutional rights.

## JURY DEMAND

47.     Plaintiffs demand a jury on each and every one of their claim.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE UNITED STATES AND NEW YORK CONSTITUTIONS ARISING FROM PLAINTIFFS' ARRESTS

48.     The arrests of the plaintiffs violated their rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

49.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE UNITED STATES AND NEW YORK CONSTITUTIONS ARISING FROM PLAINTIFFS' DETENTION

50.  The detention of plaintiffs violated their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

51.  As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

### THIRD CAUSE OF ACTION

### DISORDERLY CONDUCT STATUTE, SUBSECTION 5

52.  Subsection 5 of the Disorderly Conduct Statute, on its face, violates the First Amendment and Due Process Clause of the Fourteenth Amendment in that it does not require that the police either (a) give a lawful order to disperse, and an opportunity to comply, before arresting persons gathered on a public sidewalk, or (b) have probable cause to believe that the persons arrested intended to substantially obstruct pedestrian traffic.

### FOURTH CAUSE OF ACTION

### PARADING WITHOUT A PERMIT

53.  New York City Administrative Code section 10.110, Parading Without a Permit, insofar as it permits defendants to require a permit for persons to walk on a public sidewalk for the purpose of peaceful protest, violates the First Amendment to the United States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

### FIFTH CAUSE OF ACTION

### FALSE ARREST AND FALSE IMPRISONMENT

54.  The false arrest and imprisonment of plaintiffs without reasonable or probable

14

cause, illegally and without a warrant, and without any right or authority to do so, were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law right as guaranteed by the laws and Constitution of the State of New York.

55. As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

**WHEREFORE,** plaintiffs request the following relief jointly and severally against all of the defendants;

(a) Compensatory damages to all plaintiffs;

(b) Punitive damage to all plaintiffs;

(c) Injunctive relief:

   1. Requiring that defendants expunge all plaintiffs' arrest records, destroy their fingerprints records, remove from all records and databases maintained by defendants any reference to plaintiffs' arrest, and request that all law enforcement agencies that have received information concerning plaintiffs' arrests destroy such information.

   2. Prohibiting defendants from enforcing the Disorderly Conduct Statute, subsection 5, against persons gathering on a public sidewalk without either giving a lawful dispersal order or having probable cause to believe that such persons intend to substantially obstruct pedestrian traffic.

   3. Prohibiting defendants from requiring a permit pursuant to New York City Administrative Code section 10.110, Parading without a Permit, for persons who

seek to walk on a public sidewalk for the purpose of peaceful protest.

(d)  Pre- and post- judgment costs, interest and attorneys' fees;

(e)  Such other and further relief as this Court may deem just and proper.

    Respectfully submitted,

    NORMAN FREDERICK BEST (NB 1968)
      575 Madison Avenue, 10th Floor
      New York, New York 10022
      (212) 671-0122

    ALAN LEVINE (AL 5297)
      99 Hudson Street, 14th Floor
      New York, New York 10013
      (212) 739-7506

    MICHAEL L. SPIEGEL (MS 0856)
      111 Broadway, Suite 1305
      New York, New York 10006
      (212) 587-8558

    MARTIN R. STOLAR (MS 1576)
      351 Broadway
      New York, New York 10013
      (212) 219-1919

    Counsel for Plaintiffs

    By: _____
         Michael L. Spiegel (MS 0856)

Dated: August 30, 2007
    New York, New York