UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RNC CONSOLIDATED CASES,

Plaintiffs,

-against-

THE CITY OF NEW YORK, ET. AL.,

Defendants

**DEFENDANTS' MEMORANDUM OF LAW IN
PARTIAL OPPOSITION TO PLAINTIFFS'
MOTIONS TO FILE AMENDED COMPLAINTS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Liora Jacobi and Raju Sundaran*
*Tel: (212) 788-0711 or 788-0467*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT

    STANDARD FOR LEAVE TO AMEND ...................................................... 2

POINT I

    PLAINTIFFS ARE BARRED FROM ASSERTING
    CERTAIN STATE LAW CLAIMS.................................................................. 4

    A.  All State Law Claims Are Time Barred .................................................. 5

POINT II

    PLAINTIFFS' PROPOSED AMENDMENTS
    SEEKING TO ADD DEFENDANT DAVID
    COHEN SHOULD BE DENIED AS FUTILE................................................. 7

    A.  Plaintiffs' Motions To Add Commissioner
    David Cohen As A New Defendant Are Futile
    And Should Be Denied In Their Entirety. ................................................ 7

        1.  Plaintiffs Fail To Allege Any Personal
        Involvement by Commissioner Cohen.............................................. 7

        2.  Plaintiffs Fail To Meet The Factors
        Required For Supervisory Liability
        Against Commissioner Cohen. .......................................................... 8

        3.  Commissioner Cohen Is Not A Final
        Policymaker Or Decision-Maker. ..................................................... 9

        4.  The Evidence In The Record
        Contradicts Plaintiffs' Claim. ......................................................... 12

        5.  To Permit Plaintiffs' Belated Theories
        of Liability Against Cohen Would Be
        Against Public Policy....................................................................... 13

**Page**

POINT III

    PLAINTIFFS' CHALLENGES TO ADMINISTRATIVE CODE § 10-110 AND PENAL LAW §240.20(5) AND §240.20(6), SHOULD BE DENIED IN THEIR ENTIRETY .......................................... 13

    A.  Challenges to Administrative Code 10-110 Should Be Denied. ................................................ 13

        1.  Plaintiffs' Motion To Assert A Section 1983 Facial Challenge to the Parading Statute Must Be Denied. ................................... 15

        2.  Plaintiffs' Motion To Assert A Section 1983 As-Applied Challenge to the Parading Statute Must Be Denied. .................................... 16

    B.  Challenges to Penal Law §240.20(5) and §240.20(6) Should Be Denied. .............................. 17

POINT IV

    MR. ROTHMAN'S NEWLY ASSERTED CLAIMS UNDER STATE AND FEDERAL LAW ...................................... 20

        1.  Alleged Public Statements Does Not Rise to Constitutional Violations .................................... 22

        2.  Denial of Permits Is Not a Constitutional Violation .................................. 23

POINT V

    PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION OF THEIR CONSTITUTIONAL RIGHT TO A FAIR TRIAL ............................................. 23

CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                <u>**Pages**</u>

<u>A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,</u>
    87 F. Supp. 2d 281 (S.D.N.Y. 2000) ............................................................... 3

<u>Albright v. Oliver,</u>
    510 U.S. 266 (1994) ............................................................................... 24, 25

<u>Arbeitman v. District Court of Vermont,</u>
    522 F.2d 1031 (2nd Cir. 1975) ...................................................................... 18

<u>Bailey v. Tricolla,</u>
    1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 12, 1996) .......................................... 5

<u>Block v. First Blood Assocs.,</u>
    988 F. 2d 344 (2d Cir. 1993)) ........................................................................ 3

<u>Bowles v. State of New York,</u>
    37 F. Supp. 2d 608 (S.D.N.Y. 1999) .............................................................. 22,23

<u>Brown v. Coughlin,</u>
    758 F. Supp. 876 (S.D.N.Y. 1991) ................................................................... 8

<u>Cameron v. Johnson,</u>
    390 U.S. 611 (1968) ................................................................................. 18

<u>Cantwell v. Connecticut,</u>
    310 U.S. 296 (1940) .............................................................................. 18,19

<u>Carroccia v. Anderson,</u>
    2003 U.S. Dist. LEXIS 3437 (N.D. Ill. Mar. 11, 2003) ........................................... 24

<u>Cartier, Inc. v. Four Star Jewelry Creations, Inc.,</u>
    2004 U.S. Dist. LEXIS 989 (S.D.N.Y., Jan. 28, 2004) ..................................... 2, 3, 17

<u>City of Lakewood v. Plain Dealer Public Co.,</u>
    486 U.S. 750 (1988) ............................................................................ 14, 17,18

<u>City of St. Louis v. Praprotnik,</u>
    485 U.S. 112 (1988) ............................................................................... 9, 10

<u>Coates v. City of Cincinnati,</u>
    402 U.S. 611 (1971) ................................................................................. 18

<u>Colten v. Kentucky,</u>
    407 U.S. 104 (1972) ................................................................................. 19

<u>**Cases**</u>                                                                                 <u>**Pages**</u>

<u>Compton v. Middaugh,</u>
   1995 U.S. Dist. LEXIS 20874 (N.D.N.Y. Sept. 26, 1995) ...................................................... 21

<u>Connally v. General Construction Co.,</u>
   269 U.S. 385 (1926) ................................................................................................................ 19

<u>Cox v. Louisiana,</u>
   379 U.S. 536 (1965) ................................................................................................................ 18

<u>Cox v. New Hampshire,</u>
   312 U.S. 569 (1941) ................................................................................................................ 18

<u>Cresswell v. Sullivan & Cromwell,</u>
   922 F.2d 60 (2d Cir. 1990) ........................................................................................................ 3

<u>Dae Woo Kim v. City of New York,</u>
   774 F. Supp. 164 (S.D.N.Y. 1991),
   <u>aff'd</u>, 962 F.2d 3 (2d Cir. 1992) .............................................................................................. 20

<u>Dorman v. Satti,</u>
   862 F.2d 432 (2d Cir. 1988),
   <u>cert. denied</u>, 490 U.S. 1099 (1989) ........................................................................................ 19

<u>Doyle v. Coombe,</u>
   1998 U.S. App. LEXIS 20261 (2d Cir. 1998) ........................................................................... 8

<u>Evans v. Syracuse City Dist.</u>
   704 F.2d 44 (2d Cir. 1983) ........................................................................................................ 3

<u>Feiner v. New York,</u>
   340 U.S. 315 (1951) ................................................................................................................ 18

<u>Field Day, LLC v. County of Suffolk,</u>
   463 F.3d 167 (2d Cir. 2006) .............................................................................. 14-15, 17-18

<u>Five Borough Bicycle Club v. City of New York,</u>
   483 F. Supp. 2d 351 (S.D.N.Y. 2007) ..................................................................................... 16

<u>Foman v. Davis,</u>
   371 U.S. 178 (1962) .................................................................................................................. 2

<u>Health-Chemical Corp. v. Baker,</u>
   915 F.2d 805 (2d Cir. 1990) ...................................................................................................... 2

<u>LaTrieste Restaurant and Cabaret v. Village of Portchester,</u>
   40 F.3d 587 (2d Cir. 1994) ...................................................................................................... 15

**Cases**                                                                 **Pages**

Langley v. Coughlin,
    715 F. Supp. 522 (S.D.N.Y. 1989) ................................................................. 8, 9

Lauro v. Charles,
    219 F.3d 202 (2d Cir. 2000) ........................................................................ 24

Lucente v. IMB Corp.,
    310 F.3d 243 (2d Cir. 2002) ......................................................................... 2

MacDraw v. CIT Group Equip. Financing,
    157 F.3d 956 (2d Cir. 1998) ......................................................................... 3

McKinnon v. Patterson,
    568 F.2d 930 (2d Cir. 1977),
    cert. denied, 434 U.S. 1087 (1978) ............................................................ 7,8

Moore v. Dormin,
    252 A.D.2d 421, 676 N.Y.S.2d 90 (1st Dept. 1998) ................................ 21

Oneida Indian Nation v. City of Sherrill,
    337 F.3d 139 (2d Cir. 2003),
    rev'd on other grounds, 544 U.S. 197 (2005) ............................................. 2

Pembaur v. Cincinnati,
    485 U.S. at 124 (1988) .............................................................................. 10

People v. Penn,
    48 Misc. 2d 634, 265 N.Y.S.2d 155 (App. Term 1st Dept. 1964),
    aff'd, 16 N.Y.2d 581, 260 N.Y.S.2d 847 (Ct. App. 1965) ...................... 18

People v. Turner,
    48 Misc. 2d 611, 265 N.Y.S.2d 841 (App Term 1st Dept 1965),
    aff'd, 17 N.Y.2d 829, 271 N.Y.S.2d 274 (Ct. App. 1966) ...................... 18

Pierson v. City of New York,
    56 N.Y.2d 950 (Ct. App. 1982) ................................................................... 5

Richardson Greenshields Securities v. Lau,
    825 F.2d 647 (2d Cir. 1987) ......................................................................... 3

Rissman v. City of New York,
    2001 U.S. Dist. LEXIS 18372 (S.D.N.Y. Nov. 9, 2001) ........................... 3

Santiago v. Steinhart,
    1993 U.S. Dist. LEXIS 14469 (S.D.N.Y., Oct. 12, 1993) ......................... 3

Sealey v. Giltner,
    116 F.3d 47 (2d Cir. 1997) ........................................................................... 8

**Cases**                                                                                              **Pages**

Silkwood Associates, Ltd. v. Junior Gallery Group, Inc.,
   991 U.S. Dist. LEXIS 4179 (S.D.N.Y., Apr. 1, 1991) ............................................................. 4

Singer v. Fulton County Sheriff,
   63 F.3d 110 (2d Cir. 1995),
   cert. denied, 517 U.S. 1189 (1996) ........................................................................................ 24

State of New York v. Patterson,
   78 N.Y.2d 711, 579 N.Y.S.2d 617 (Ct. App. 1991) ................................................................ 21

Tamari v. Bache & Co.,
   838 F.2d 904 (7th Cir. 1988) ................................................................................................ 3

Thomas v. Chicago Park District,
   534 U.S. 316 (2002) ............................................................................................................ 14

United for Peace and Justice v. Bloomberg,
   5 Misc. 3d 845, 783 N.Y.S.2d 255 (Sup. Ct. N.Y. Co. 2004) .............................................. 23

United States of America v. Schnitzer,
   567 F.2d 536 (2d Cir. 1997) ................................................................................................ 21

United States v. Thirty-Seven Photographs,
   402 U.S. 363 (1971) ............................................................................................................ 20

Virginia v. American Booksellers Associate Inc.,
   484 U.S. 383 (1988) ............................................................................................................ 19

Vives v. City of New York,
   405 F.3d 115 (2d Cir. 2004) .......................................................................................... 15,16

Williams v. Smith,
   781 F.2d 319 (2d Cir. 1986) .............................................................................................. 7, 8

Wisconsin Right to Life, Inc.v. FEC,
   546 U.S. 410 (2006)) .................................................................................................... 14, 18

Wright v. Smith,
   21 F.3d 496 (2d Cir. 1994) .................................................................................................... 8

Zenith Radio Corp. v. Hazeltine Research, Inc.,
   401 U.S. 321 (1971) ........................................................................................................... 3,4

**Statutes**                                                                                    **Pages**

42 U.S.C. §1983 ............................................................................................................... *passim*

28 U.S.C. §2403(b)……………………………………………………………….20

N.Y. C.P.L. §160.50 ............................................................................................ 6, 20, 21

N.Y.S. C.P.L. §160.10 .............................................................................................. 6, 22

NYPL §240.20(5) ................................................................................................... *passim*

NYPL § 240.20(6) .................................................................................................. *passim*

NYC Administrative Code § 10-110 ...................................................................... *passim*

NYCRR § 19-02……………………………………………………………….16

New York City Charter §434(b) ..................................................................................... 10

N.Y. G.M.L. § 50-e ........................................................................................................ 5, 6

N.Y. G.M.L. § 50-i ......................................................................................................... 5, 6

13 V.S.A. § 1026(5)………………………………………………………...18

F.R.C.P. Rule 12(b)(6) ....................................................................................................... 2

F.R.C.P. 15(a)…………………………………………………………2, 3, 8

Tribe, American Constitutional Law (2d Ed. 1988) § 12-30…………………………...20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RNC CONSOLIDATED CASES,

Plaintiffs,

-against-

THE CITY OF NEW YORK, ET. AL.,

Defendants

**DEFENDANTS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTIONS TO FILE AMENDED COMPLAINTS**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Liora Jacobi and Raju Sundaran*
*Tel: (212) 788-0711 or 788-0467*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

RNC CONSOLIDATED CASES,

                                        Plaintiffs,

                                                    (RJS)(JCF)

            -against-


THE CITY OF NEW YORK, ET. AL.,

                                        Defendants.

------------------------------------------------------------------------- x


## DEFENDANTS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTIONS TO FILE AMENDED COMPLAINTS

### PRELIMINARY STATEMENT

Just a few months prior to the close of discovery, plaintiffs belatedly move for leave to file amended complaints adding numerous new defendants and a variety of newly asserted federal and state law claims seeking both monetary and (as amended) equitable relief. Before the Court are a total of 37 cases wherein plaintiffs seek leave to amend their pleadings.[1] For the reasons set forth below, these motions should be denied in part because plaintiffs have failed to meet the requirements of F.R.C.P. 15(a).

---

[1] The following includes these 37 cases: Chris Dunn filed motions in Schiller and Dinler; Robert Finkelstein filed a motion in Grosso; Beldock Levine filed motions in MacNamara, Portera, and Rechtschaffer; Jeff Rothman filed motions in Bastidas, Xu, Sloan, Galitzer, Sikelianos, Coburn, Drescher and, Phillips; Michael Spiegel filed motions in Abdell, Adams, Araneda and Eastwood; James Meyerson filed motions in Bell, Cohen, Dudek, Lee and Starin; Rose Weber filed motions in Bunim, Kalra, Ryan, Garbini, Greenwald, Pickett, Tremayne, Biddle, Moran, Botbol, Crotty, Stark and Lalier; and Andrea Ritchie and co-counsel Rose Weber filed a motion in Tikkun. Defendants have objections to all of the plaintiffs' complaints as set forth herein, except Schiller and Dinler.

## ARGUMENT

## STANDARD FOR LEAVE TO AMEND

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. P. 15(a). The second sentence of Rule 15(a) provides that "[o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Id. "A proposed amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005).

Leave to amend may be denied, in the court's discretion, "where it appears that granting leave to amend is unlikely to be productive." Lucente v. IMB Corp., 310 F.3d 243, 258 (2d Cir. 2002). "One appropriate basis for denying leave to amend is that the proposed amendment is futile." Id. (citation omitted). "A proposed amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation, supra; see also Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied").

Leave to amend a complaint should likewise be denied, where defendants have demonstrated undue delay, bad faith, or dilatory motive, or where defendants would suffer undue prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962). See also Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989, at *1 (S.D.N.Y., Jan. 28, 2004).[2] Where a plaintiff seeks to amend the complaint after an inordinate delay, plaintiff bears the burden the burden of

---

[2] Copies of all LEXIS cited cases will be provided under separate cover.

explaining that delay.  MacDraw v. CIT Group Equip. Financing, 157 F. 3d. 956, 962 (2d Cir.

1998); see also Cartier, supra, at *7-8 (citing Evans v. Syracuse City Dist., 704 F. 2d 44, 46-48 (2d

Cir. 1983)) (where considerable time has elapsed between the filing of the complaint and the motion

to amend, the moving party has the burden to provide a satisfactory and valid explanation for the

delay; Cresswell v. Sullivan & Cromwell, 922 F. 2d 60, 72 (2d Cir. 1990); Tamari v. Bache & Co.,

838 F. 2d 904 (7th Cir. 1988) (the longer the delay, the less likely it is that the moving party will be

able to provide a satisfactory excuse).  See also Santiago v. Steinhart, 1993 U.S. Dist. LEXIS

14469, at *3 (S.D.N.Y., Oct. 12, 1993) (citing Cresswell, 922 F. 2d at 72 (court plainly has the

discretion to deny leave to amend where the motion is made after an inordinate delay, no

satisfactory explanation is offered for the delay, and the amendment would prejudice the

defendant)).

Moreover, prejudice to the opposing party is one of the most important factors in ruling on a

Rule 15(a) motion.  Rissman v. City of New York, 2001 U.S. Dist. LEXIS 18372, at *1 (S.D.N.Y.

Nov. 9, 2001); A.V. by Versace, Inc. v. Gianni Versace, S.p.A. 87 F. Supp. 2d 281, 299 (S.D.N.Y.

2000).  See also Santiago v. Steinhart, supra, 1993 U.S. Dist. LEXIS 14469 at *7 (citing Richardson

Greenshields Secs. v. Lau, 825 F. 2d 647, 653, n. 6 (2d Cir. 1987) ("[o]ne of the most important

factors in determining whether to grant a motion to amend a complaint under F.R.C.P. 15(a) is

whether the non-moving party will be prejudiced.")).  In considering whether the opposing party

would be prejudiced by the filing of an amended pleading, "a district court should consider whether

allowing the amendment would require the nonmoving party to expend significant additional

resources or significantly delay the resolution of the dispute." Cartier, Inc. v. Four Star Jewelry

Creations, Inc., 2004 U.S. Dist. LEXIS 989, at *7-8 (citing Block v. First Blood Assocs., 988 F. 2d

344, 350 (2d Cir. 1993)).  See also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321,

330-31 (1971) (district court should examine the nonmoving party's time and expenses spent

preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by proposed amendments.)

In Silkwood Associates, Ltd. v. Junior Gallery Group, Inc., 991 U.S. Dist. LEXIS 4179 (S.D.N.Y., Apr. 1, 1991), where (as is the case here), discovery was nearing completion before the plaintiff moved to amend the complaint to name five new defendants. In denying the plaintiff's motion to amend, the Court, in addition to finding the motion as being untimely, further held that allowing the amendment would result in prejudice to the defendants:

> Substantial additional discovery would be required, not only with respect to the new theories against the present defendants, but in connection with the five new defendants as well. Assuming without deciding that the motion to amend is timely within the context of the Court's prior scheduling orders, the prejudice to the defendants in allowing the amendment is manifest, and the application comes too late.

1991 U.S. Dist. LEXIS 4179, at *1-2.

As this Court is aware, plaintiffs filed their motions to amend literally on the eve of their respective statute of limitations expirations and fact discovery is soon to close on November 15[th.] Clearly, plaintiffs have not shown any diligence on their part, resulting in substantial prejudice to the defendants, and their motions for leave to amend should be denied as set forth below.[3]

## POINT I

### PLAINTIFFS ARE BARRED FROM ASSERTING CERTAIN STATE LAW CLAIMS

To the extent that plaintiffs seek to amend their complaints to assert new state law causes of action against newly added or other already-named defendants, such amendments would be futile

---

[3] Defendants reserve their right to move on any and all claims set forth in all of the amended pleadings in their prospective summary judgment motions.

because all new state law claims are barred by the applicable statute of limitations.[4]  To the extent that plaintiffs "proposed" amended pleadings seek to either assert previously pled state law causes of action or assert any state law claims against the new defendants, those claims are similarly time barred and their motions to amend must be denied.[5]

### A.    All State Law Claims Are Time Barred

New York's General Municipal Law §§ 50-e and 50-i requires that plaintiffs asserting state law tort claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues.  *See*  N.Y. Gen. Mun. Law § 50-e and 50-i.  These provisions have been strictly construed by both state and federal courts.  *See* Bailey v. Tricolla, 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 12, 1996). [6]

In the instant RNC matters, all purported state law causes of action arising from the dates of the plaintiffs' arrests and detentions, are time-barred against all new defendants for the reasons set forth herein.  The dates of plaintiffs' arrests herein span from August 27, 2004 through August 31,

---

[4] In the eight cases brought by Mr. Rothman, including Bastidas, Xu, Sloan, Galitzer, Sikelianos, Coburn, Drescher and Phillips, plaintiffs seek to assert wholly new state law causes of action.

[5] In the following cases plaintiffs seek new defendants, however their pleadings do not make clear whether plaintiffs intend assert these previously pled state law causes of action against the newly added defendants. To the extent plaintiffs attempt to do so, their motions must be denied.  These cases include: Grosso; MacNamara, Portera, and Rechtschaffer; Abdell, Adams, Araneda and Eastwood; Cohen; Tikkun and Mr. Rothman's cases Bastidas, Xu, Sloan, Galitzer, Sikelianos, Coburn, Drescher and Phillips.

[6] Also, as stated above, any such application to file an amended notice of claim against an individual must be done so within the statutory 1 year + 90 day period.  *See* Pierson v. City of New York, 56 N.Y.2d 950 (Ct. App. 1982).  Thus, notwithstanding whether a state law claim may have been timely asserted in an amended pleading against a newly added defendant, to the extent that any plaintiff failed to either file a notice of claim, or, failed to file a notice of claim against that new defendant, they are statutorily barred for failure to comply with statutory pre-requisites under N.Y. G.M.L. §§ 50-e and 50-i.

2004.  Thus, pursuant to GML §§50-e and 50-i, the statute of limitations for all state law claims arising from the latest date of arrest of August 31, 2004, in fact expired on <u>December 1, 2005</u>.

In the eight cases brought by counsel Mr. Rothman, plaintiffs seek to assert new state law causes of action and theories of liability which were never asserted in the original complaints, including the following: (1) violations of the N.Y.S. C.P.L. §§160.10 and 160.50; (2) assault and battery; (3) abuse of process; (4) violation and retaliation of right to free speech and assembly; (5) violation of the equal protection clause; (6) negligence; (7) negligent retention and training and (8) prima facie tort, all being asserted under state common law and/or the N.Y.S. Constitution.[7] Without even addressing the merits of these new allegations, plaintiffs are barred from asserting these new state law causes of action since the applicable statute of limitations expired, at most, on December 1, 2005, which was the one year and 90-day period from the last date of arrest of August 31, 2004.[8]  Consequently, these plaintiffs' motion to amend to assert new state law claims must be denied as futile because they are time-barred.

---

[7] See <u>Coburn</u> Second Amended Complaint at ¶¶131-133; See <u>Philips</u> First Amended Complaint at ¶¶133-135; See <u>Sikelianos</u> First Amended Complaint at ¶¶119-121; See <u>Bastidas</u> Second Amended Complaint at ¶¶146-148; See <u>Xu</u> Second Amended Complaint at ¶¶146-48; See <u>Sloan</u> Second Amended Complaint at ¶¶140-42; See <u>Galitzer</u> Second Amended Complaint at ¶¶123-25; and <u>Drescher</u> First Amended Complaint at ¶¶144-46; 156-58; 159-61; 162-64; 165-67; 168-70; and 171-73.

[8] To the extent that any of these plaintiffs seek to assert state law claims of malicious prosecution or abuse of process, they are likewise barred by the applicable limitations period since these motions were filed beyond the one year and 90-day period that tolled from the dates of their dismissals.

**POINT II**

**PLAINTIFFS' PROPOSED AMENDMENTS SEEKING TO ADD DEFENDANT DAVID COHEN SHOULD BE DENIED AS FUTILE.**

Twenty-seven (27) proposed amended complaints[9] have been filed by six separate plaintiffs' attorneys which seek leave to amend to add Commissioner David Cohen ("Cohen") as an individually named defendant, as well as a _Monell_ defendant, alleging theories of liability on a variety of grounds under Section 1983. Leave to amend to add Cohen as a defendant should be summarily denied because: (a) Cohen had no personal involvement in plaintiffs' arrest or detention; (b) Cohen was not a supervisor of any of the officers involved in the arrest, processing or detention of plaintiffs; (c) Cohen was not a final policymaker or decision-maker; and (d) plaintiffs' contentions contradict the evidence in the record. Moreover, allowing such an amendment would be inconsistent with public policy and law enforcement in all levels of government.

**A.    Plaintiffs' Motions To Add Commissioner David Cohen As A New Defendant Are Futile And Should Be Denied In Their Entirety.**

    1.    Plaintiffs Fail To Allege Any Personal Involvement by Commissioner Cohen.

It is well established that Section 1983 imposes liability only upon a defendant who personally "subjects, or causes to be subjected" any person to the deprivation of any federal right. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." _Id._ (_quoting_ McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), _cert. denied_, 434

---

[9] Those proposed complaints are: Grosso, Drescher, Phillips, Coburn, Bastidas, Xu, Sloan, Galitzer, Sikelianos, Macnamara; Adams, Araneda, Eastwood, Abdell, Bunim, Kalra, Ryan, Garbini, Greenwald, Pickett, Tremayne, Biddle, Moran, Botbol, Lalier, Crotty and Stark. For the purpose of efficiency, defendants' arguments and analysis address only one representative example from each set of plaintiffs' proposed complaints as the claims and allegations of each complaint in each attorney's set are virtually identical.

U.S. 1087 (1978)); Doyle v. Coombe, 1998 U.S. App. LEXIS 20261 at *3 (2d Cir. 1998); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Brown v. Coughlin, 758 F. Supp. 876, 888 (S.D.N.Y. 1991) ("personal involvement is a strict prerequisite to the imposition of monetary liability"). Here, plaintiffs fail to allege sufficient facts in their amended complaints which demonstrate that Commissioner Cohen ("Cohen") had any personal involvement in their arrest, detention or prosecution.

In each instance where Cohen is named as an individual defendant in plaintiffs' amended complaints, he is summarily grouped with other police officers who either made arrests or ordered arrests at certain locations.[10]  Absent from each plaintiff's proposed amended complaint, however, is any allegation that Cohen had any personal involvement in that plaintiff's arrest or detention, or that Cohen had any personal knowledge of that plaintiffs' arrest or detention.  There are also no allegations that Cohen was present at any particular arrest location; present at any arrest-processing facility; or played any role in the charges brought against plaintiffs or subsequent prosecution.  Thus Cohen is not a proper defendant and plaintiffs' amendments seeking to add him as a defendant should be denied as futile.

   2.    Plaintiffs Fail To Meet The Factors Required For Supervisory Liability Against Commissioner Cohen.

In order to prove a failure to supervise under Section 1983, a plaintiff must prove that the supervisor was personally involved in a constitutional violation. Langley v. Coughlin, 715 F. Supp. 522 (S.D.N.Y. 1989) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).  Personal involvement can be shown (1) by a defendant who "directly participated in the infraction;" (2) by a "supervisory official, after learning of the violation through a report or appeal,…[who] failed to

remedy the wrong;" (3) by a "supervisory official …[who] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue;" or (4) by a supervisory official…[who] was grossly negligent in managing subordinates who caused the unlawful condition or event." Langley, 715 F.Supp. at 545.

Plaintiffs have failed to make, other than in conclusory form, any specific allegations supporting any one of these theories under which individual supervisory liability against Cohen might lie in this case, or any facts that would support any such theory.[11] Cohen did not supervise any of the high-ranking police officials at those arrest locations during the RNC; did not supervise any of the police officers who either ordered arrests, made arrests or were assigned arrests at the arrest locations; did not supervise or oversee the arrest-processing procedure at the arrest-processing facility (including the completion of any arrest paperwork); and did not supervise the subsequent prosecution of any of the plaintiffs by the District Attorney's office. Plaintiffs simply fail to allege that Cohen performed any supervisory function with respect to their arrest and detention. For these reasons alone, any individual claim for supervisory liability against Cohen fails as a matter of law.

3.    Commissioner Cohen Is Not A Final Policymaker Or Decision-Maker.

Commissioner Cohen is not a "final policymaker" within the meaning of Section 1983 case law. In order for municipal liability to lie, the decision in question must be made by a "final policymaker." The leading case in determining who is a "policymaker" for the purposes of determining municipal liability is City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). In

---

[10] Macnamara Second Amended Complaint at ¶¶49, 51; Tremayne Fourth Amended Complaint at ¶¶18-21; Grosso Third Amended Complaint at ¶18; Philips First Amended Complaint at ¶¶16, 71 and 97; Abdell Third Amended Complaint at ¶¶15, 48-51; Adams Third Amended Complaint at ¶¶9, 19-21

[11] Macnamara Second Amended Complaint at ¶¶253-255; Grosso Third Amended Complaint at ¶¶147-149; Philips First Amended Complaint at ¶¶29, 74; Abdell Third Amended Complaint at ¶¶46, 48-51 and Memorandum at p. 12; Adams Third Amended Complaint at ¶¶9, 37-39

9

Praprotnik, the United States Supreme Court set forth the test to be used by the district courts in determining whether a challenged decision was made by a "final policymaker" such that municipal liability may arise:

> Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.' Pembaur v. Cincinnati (plurality opinion). Thus the identification of policymaking officials is not a question of federal law and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms… …Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of local government's business.

485 U.S. at 124 (1988).

If one looks to state law as per Praprotnik, the individual responsible for policy of the New York City Police Department under New York state law is the Police Commissioner. Section 434(b) of the New York City Charter states: "The commissioner shall be the chief executive officer of the police force. He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department." By virtue of §434(b), Cohen is not a "final policymaker" for Monell purposes under Section 1983.

Indeed, the final "policymaker" for the RNC policies was Police Commissioner Raymond Kelly.[12] Contrary to plaintiffs' conclusory allegations in their proposed amended pleadings, the

---

[12] Joseph Esposito Testimony, dated July 7, 2006 – pp. 82, 150, 249; dated July 11, 2006 – pp. 266-267, 271; dated July 14, 2006 – pp. 558-560; dated July 21, 2006 – p. 689;

record is simply devoid of any evidence that Cohen was a policymaker.[13]  Cohen also testified that his role was to provide information to the decision-makers and that he himself was not a "policymaker."[14]  Thus, Cohen was not a "policymaker," let alone a "final policymaker" for <u>Monell</u> purposes.

Plaintiffs also fail to articulate any specific action taken or adopted by Cohen directly leading to the allegedly unconstitutional police conduct and policies implemented during the RNC that would make him a "policymaker" for <u>Monell</u> purposes.  Plaintiffs lump his name in with others they claim were the "policymakers."[15]  At best, a review of plaintiffs' proposed amended pleadings and moving papers show that Cohen merely gathered and provided information to the "policymakers" in the New York City Police Department.[16]  The method in which the actual "policymakers" used the information and set policy for the RNC does not make Cohen personally liable for any alleged consequences of such policy.

Plaintiffs' novel theory - - that Cohen's information-gathering and presentation to "policymakers" was misrepresented to create and foster a "climate of hostility towards demonstrators" by NYPD officers, and contributed to the policing policies during the RNC[17] - -

---

[13] <u>Macnamara</u> Second Amended Complaint at ¶¶38, 90 and 222-237; <u>Tremayne</u> Fourth Amended Complaint at ¶¶104-110; <u>Grosso</u> Third Amended Complaint at ¶¶60, 63; <u>Philips</u> First Amended Complaint at ¶¶16, 77-89; <u>Abdell</u> Third Amended Complaint at ¶46.

[14] David Cohen Transcript, March 28, 2007, pp. 27, 42, 45, 48, 53, 56, 109-110 and 192. *See also,* David Cohen Declaration, June 6, 2007, ¶¶1, 21.

[15] <u>Macnamara</u> Second Amended Complaint at ¶¶69, 90 and 98; <u>Tremayne</u> Fourth Amended Complaint at ¶27; <u>Grosso</u> Third Amended Complaint at ¶¶147-149; <u>Philips</u> First Amended Complaint at ¶16; <u>Abdell</u> Third Amended Complaint at ¶¶ 46, 48-51; and <u>Adams</u> at ¶¶9, 22-24

[16] <u>Macnamara</u> Memorandum of Law in Support, pp. 5-6; <u>Philips</u> Memorandum of Law in Support, pp. 9-10; <u>Abdell</u> Memorandum of Law in Support, p. 7.

[17] <u>Philips</u> First Amended Complaint at ¶64; <u>Abdell</u> Memorandum of Law, p. 7; <u>Adams</u> Third Amended Complaint at ¶18

does not make Cohen a "policymaker" for <u>Monell</u> purposes, and plaintiffs cite to <u>no</u> authority in support of their contention.

    4.    <u>The Evidence In The Record Contradicts Plaintiffs' Claim.</u>

A reading of plaintiffs' generalized complaints demonstrates that Cohen gathered information and presented it to the "policymakers." Plaintiffs' specious allegations that this information was misrepresented in order to create a hostile climate towards the demonstrators by the police officers, and further contributed to the alleged unconstitutional policies during the RNC, is belied by the record in these cases.

As plaintiffs and this Court are aware, as a result of discovery and motion practice, plaintiffs' claims regarding any "misrepresentation" of information by Cohen are not supported by the record. Defendants have produced to plaintiffs over 600 pages of intelligence information gathered from public sources.[18] In addition to the information set forth in the 600 pages of intelligence materials produced, there was wealth of similar information being reported over various media, including the Internet, newspapers and television, leading up to the RNC, indicating that people were planning to come to New York City to protest and cause civil disobedience. Plaintiffs' proposed amendments alleging that Cohen made misrepresentations by reporting this very same information to the decision-makers and thus created a "climate of hostility" towards the protestors flies in the face of the information that was being widely discussed in the public, leading up to the RNC. For plaintiffs to ignore that reality and seek to amend their complaints to allege to the contrary is bad faith. Plaintiffs' proposed amendments are not supported by any evidence in the record and should be denied.

---

[18] In addition, the Court has reviewed the intelligence information over which defendants have asserted relevance and privilege objections, and as the Court is aware, that information further supports the publicly available information for the potential of civil disobedience, or worse.

5.     To Permit Plaintiffs' Belated Theories of Liability Against Cohen Would Be Against Public Policy.

In addition to the fact that plaintiffs proposed amendments fail as a matter of law, it would be contrary to public and governmental policy to allow plaintiffs to maintain an action against employees of government whose duties are to collect and present information. If every public official who provides an opinion is subject to a lawsuit, it would send a chilling message to all levels of government and stifle government officials in the discharge of their official duties. Moreover, it would undoubtedly overwhelm and burden the courts with frivolous, harassing litigation.

**POINT III**

**PLAINTIFFS' CHALLENGES TO ADMINISTRATIVE CODE § 10-110 AND PENAL LAW §240.20(5) AND §240.20(6), SHOULD BE DENIED IN THEIR ENTIRETY.**

**A.     Challenges to Administrative Code 10-110 Should Be Denied.**

Nineteen (19) cases seek to amend their pleadings to add new causes of action and to add new equitable relief by their proposed amendments asserting "facial" and "as-applied" constitutional challenges to Administrative Code § 10-110 (parading without a permit).[19] The essence of the legal theories previously set forth in plaintiffs' original complaints was that they were falsely arrested, maliciously prosecuted and excessively detained pre-arraignment in order to punish them for demonstrating. Implicit in plaintiffs' original claims was that the statutes and administrative code provisions under which they were arrested were valid. Three years after the underlying RNC events and at the close of discovery, plaintiffs now wish to change the fundamental

---

[19] Those 19 cases are the following: Drescher, Phillips, Coburn, Bastidas, Xu, Sloan, Galitzer, Sikelianos, Macnamara, Abdell, Adams, Araneda, Eastwood, Tikkun, Bell, Cohen, Dudek, Lee and Starin.

theories of liability in their factual allegations in seeking relief based on laws enacted by local legislative bodies of government.

Plaintiffs now, for the first time, make "facial" and "as-applied" constitutional challenges to Administrative Code § 10-110 and specifically seek both equitable and monetary relief, notwithstanding that these RNC cases have all along solely sought monetary relief. Plaintiffs literally filed their motions to amend at the eleventh hour on the eve of the expiration of the three-year statute of limitations. Defendants would suffer significant prejudice if these motions to amend were granted because the claims require new and extensive discovery. The original complaints did not put defendants on "fair notice" of these new claims and plaintiffs have failed to articulate any reasonable basis for their extraordinary delay. Plaintiffs' motions for leave to amend to add these new claims must be denied.

There are two ways to challenge a statute on free speech grounds. The first way is a facial challenge, which challenges only the text of the statute itself. Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006) (citing City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770, n.11 (1988)). A facial challenge to a statute typically "considers only the text itself, not its application to the particular circumstances of an individual." Id. The second is an "as applied" challenge, which "requires an analysis of the facts of a particular case to determine whether the application of the statute, even constitutional on its face, deprived the individual to whom it was applied of a protected right." 463 F.3d at 174-175 (citing Wisconsin Right to Life, Inc.v. FEC, 546 U.S. 410 (2006)). The Second Circuit in Field Day gave several examples of instances of where a statute, though Constitutional on its face, is unconstitutional "as applied." For example, the use of a "facially constitutional licensing regulation to favor certain speakers 'over other speakers would of course be unconstitutional." 463 F.3d at 192-193 (quoting Thomas v. Chicago Park District, 534 U.S. 316, 325 (2002)). Another example provided by the Second Circuit in Field Day was the

14

selective enforcement of zoning regulations to a topless cabaret establishment in an attempt to prevent it from operating. *Id.* (*citing* La Trieste Restaurant and Cabaret v. Village of Port Chester, 40 F.3d 587, 589, 590-91 (2d Cir. 1994)).

1.  Plaintiffs' Motion To Assert A Section 1983 Facial Challenge to the Parading Statute Must Be Denied.

Here, a facial challenge would call into question acts of a legislative body of government, and not the NYPD, namely the enactment of the Administrative Code provision at issue in this case. Plaintiffs' original complaint did not challenge the constitutionality of the Administrative Code provision but rather focused exclusively on the NYPD's action in policing the RNC. Defendants believe that none of the plaintiffs in these RNC cases have any good-faith basis to add these claims, and waiting until the eve of the expiration of the statute of limitations to do so is extremely dilatory and prejudicial.

Plaintiffs fail to articulate with any specificity how Administrative Code § 10-110 is on its face unconstitutional, and at best merely suggest that it is "unconstitutionally vague, impermissibly overbroad and improperly applies strict liability" and that the term "parade or procession" is not defined, without pointing to any evidence or cite to any case law to support these allegations. Plaintiffs only challenge the statute as it was written in August of 2004 during the underlying relevant period and apparently seek declaratory relief enjoining the City from enforcing that statute. Plaintiffs also fail to articulate which portions of §10-110 in 2004 were unconstitutional on its face, and likewise fail to show that the defendants were on "fair notice" that such portions of the statute were conclusively held to be facially invalid. Thus, at a minimum, the individual defendants would be entitled to qualified immunity to believe that it was not unconstitutional to arrest and prosecute an individual for violation of §10-110 as it was written during the underlying period of time. *See* Vives v. City of New York, 405 F.3d 115 (2d Cir. 2004), where the Second Circuit reaffirmed the principle that "absent contrary direction, state officials . . . are entitled to rely on a presumptively

valid state statute . . . until and unless [the statute is] declared unconstitutional . . ." (citation omitted).

More importantly, in light of various amendments to §10-110 and to the related Rules of the City of New York since, plaintiffs' facial challenge to §10-110 and request for declaratory relief is now moot. *See* Five Borough Bicycle Club v. City of New York, 483 F.Supp.2d 351 (S.D.N.Y. 2007), where this Court noted the assertion of various constitutional challenges to §10-110, culminating in amendments and enactments, including most recently in January 26, 2007, when the NYPD amended the definition of "parade or procession" under Section 19-02 of the City rules. For this reason alone, plaintiffs' motions to amend should be denied as futile. Also, any suggestion by plaintiffs that they would suffer irreparable harm unless this Court enjoined the City and NYPD from enforcing the parading statute is belied by their delay of three years to add this claim. Consequently, plaintiffs' motions to amend to assert a new cause of action under Section 1983, wherein they seek to facially challenge the 2004 parading statute, should be denied as futile.

2.   Plaintiffs' Motion To Assert A Section 1983 As-Applied Challenge to the Parading Statute Must Be Denied.

Similarly, plaintiffs fail to point out how the parading statute is unconstitutional "as applied," or how the defendants enforced the statute in an arbitrary or discriminatory fashion during the underlying relevant period. In fact, barely weeks away from the close of discovery, there has been no discovery conducted by any plaintiff that would tend to reveal any evidence to support this claim. Moreover, since nothing was ever asserted in plaintiffs' original complaints suggesting that they intended to challenge the parading statute as-applied to them, nor, to seek equitable relief based on that claim, defendants were not on fair notice of this new cause of action.

Moreover, despite that no such discovery was ever conducted by plaintiffs herein, the defendants are entitled to gather, analyze and compare such data in order to defend against plaintiffs' new claims. Whether or not plaintiffs ever sought this information is not relevant, since

the defendants are entitled to do so.  Proper and extensive discovery would be necessary, for example, in order to compare the rate of arrest and/or summonses or DAT issuance for all other arrests unrelated to demonstration activity for similar violations.  In order to establish an adequate and fair comparison, the rate would have to include a reasonable time period prior to and subsequent to the period of the RNC, and the rate of arrest for similar violations during the underlying RNC time frame for those arrested in connection with non-protest activities.  This kind of discovery requires months if not years for the simple purpose of data gathering and comparison, which undoubtedly would consume an inordinate amount of time by the NYPD and the City of New York.  Such anticipated significant and costly discovery is grounds alone to deny plaintiffs' motions to amend and add this new cause of action.  *See* Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989 (S.D.N.Y., Jan. 28, 2004).  Data gathering of this magnitude would also seriously delay and extend the course of discovery in these RNC cases.  As a result, defendants would suffer severe prejudice due to the delay in obtaining a final resolution of the underlying claims.  Accordingly, plaintiffs' motion to amend to add these claims must be denied.

**B.**     **Challenges to Penal Law §240.20(5) and §240.20(6) Should Be Denied.**

Plaintiffs in 19 cases also seek to amend their pleadings to add a new causes of action alleging both facial and as-applied constitutional challenges to New York State Penal Law ("NYPL") §240.20(5) and §240.20(6) – the disorderly conduct statutes.[20]  As stated above, there are two ways to challenge a statute on free speech grounds.   The first way is a facial challenge, which challenges only the text of the statute itself.  Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006) (*citing* City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770, n.11

---

[20] Those 19 cases are the following: Drescher, Phillips, Coburn, Bastidas, Xu, Sloan, Galitzer, Sikelianos, Macnamara, Abdell, Adams, Araneda, Eastwood, Tikkun, Bell, Cohen, Dudek, Lee and Starin.

(1988)).  The second is an "as applied" challenge, which "requires an analysis of the facts of a particular case to determine whether the application of the statute, even constitutional on its face, deprived the individual to whom it was applied of a protected right." 463 F.2d at 174-175 (*citing* Wisconsin Right to Life, Inc.v. FEC, 546 U.S. 410 (2006)).

It is well settled law that municipalities have the authority to impose traffic regulations in order to assure the safety and convenience of the people in the use of public roadways, so long as such regulations are not inconsistent with civil liberties.  Feiner v. New York, 340 U.S. 315 (1951); Cox v. New Hampshire, 312 U.S. 569 (1941); Cantwell v. Connecticut, 310 U.S. 296 (1940). Prosecutions for disorderly conduct are appropriate and constitutional for conduct that, even taking the form of protest, seriously interferes with vehicular or pedestrian traffic.  People v. Penn, 48 Misc. 2d 634, 265 N.Y.S.2d 155 (App. Term 1st Dept. 1964), *aff'd,* 16 N.Y.2d 581, 260 N.Y.S.2d 847 (Ct. App. 1965); People v. Turner, 48 Misc. 2d 611, 265 N.Y.S.2d 841 (App Term 1st Dept 1965), *aff'd,* 17 N.Y.2d 829, 271 N.Y.S.2d 274 (Ct. App. 1966).  States may properly legislate to prevent persons from blocking sidewalks and obstructing traffic, Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971), and demonstrators may not insist upon the right to cordon off a street. Cox v. Louisiana, 379 U.S. 536, 555 (1965); Arbeitman v. District Court of Vermont, 522 F.2d 1031 (2nd Cir. 1975).

In Arbeitman, the Second Circuit upheld the facial constitutionality challenges of 13 V.S.A. §1026(5), which is Vermont's disorderly conduct statute.  The Court reasoned that they are reluctant to strike down the statute where there might be a substantial number of situations to which it could be validly applied. 522 F.2d at 1034.  "As presently construed, we do not believe that §1026(5) must be discarded *in toto* because some persons' arguably protected conduct may or may not be caught or chilled by the statute. *Id.*  Similarly, in Cameron v. Johnson, 390 U.S. 611, 616 (1968), the Supreme Court held that the term "obstruct" requires no guessing as to its meaning; "an

obstruction which inconveniences or annoys is readily recognizable." An obstruction which inconveniences or annoys is a physical condition which is apparent to all "men of common intelligence." Connally v. General Construction Co., 269 U.S. 385, 391 (1926). "Citizens who desire to obey the statute will have no difficulty in understanding it . . ." Colten v. Kentucky, 407 U.S. 104, 110 (1972).

Here, plaintiffs have failed to cite to any legal authority in support of their positions to have the Court hold NYPL §§ 240.20(5) and (6) unconstitutional on its face and as applied and fail to state with any level of specificity the precise nature of the alleged constitutional defects.[21] In light of the forgoing authority, it is evident that plaintiffs' motion for leave to amend is futile.

More importantly, plaintiffs have failed to initially assert these claims in the proper forum – New York State court. The United States Supreme Court has routinely encouraged the use of state certification procedures as an alternative to "the more cumbersome and . . . problematic abstention doctrine." See Virginia v. American Booksellers Assoc. Inc., 484 U.S. 383 (1988). The purpose of certification is to obtain the benefit of an authoritative construction from the state's highest court before proceeding to the merits of the dispute. Dorman v. Satti, 862 F.2d 432 (2d Cir. 1988), cert. denied, 490 U.S. 1099 (1989). This may further the interests of federal/state comity by providing the state court with the opportunity to rule on an issue of state law before being precluded from doing so by a contrary federal court judgment. 862 F.2d at 435-36. The state court's interest in accepting a certified question for review is particularly strong when it has not yet had the opportunity to interpret the pertinent statutory language. American Booksellers, 484 U.S. at 396-97.

---

[21] Macnamara Second Amended Complaint. at ¶¶ 246-252; Cohen First Amended Complaint at ¶¶ 110-115; Phillips First Amended Complaint at ¶¶ 77-90; Abdell Third Amended Complaint at ¶ 52; Tikkun First Amended Complaint at ¶¶ 186-190.

Only the New York Court of Appeals may authoritatively construe its state and local laws. Dae Woo Kim v. City of New York, 774 F. Supp. 164 (S.D.N.Y. 1991), aff'd, 962 F.2d 3 (2d Cir. 1992)); United States v. Thirty-Seven Photographs, 402 U.S. 363, 369 (1971); Tribe, American Constitutional Law (2d Ed. 1988) § 12-30 (reviewing court may not substitute its own savings interpretation of state statute for that authoritatively given by state's highest court). Moreover, pursuant to 28 U.S.C. 2403(b), the District Court is mandated to issue a Certification Order and notify the New York State Attorney General of any action challenging the constitutionality of a state statute that will affect the public interest and permit its intervention for presentation of evidence and argument on the question of the statute's constitutionality. See Vives, supra, at 116, [FN 1] and 28 U.S.C. 2403(b). Consequently, because the State would have all the rights of a party in its participation in the action on the constitutionality issue, these RNC actions would be subject to delay in the final resolution of these cases. Plaintiffs' proposed amendments for facial constitutional challenges to NYPL §§ 240.20(5) and (6) should thus be denied on these additional grounds alone.

Plaintiffs also seek to amend their complaints challenging the disorderly conduct statute as-applied during the RNC period herein. For the same reasons set forth above in sub-point "A" in response to plaintiffs' as-applied challenges to the parading statute, all motions seeking leave to amend to add Section 1983 as-applied claims challenging the constitutionality of the disorderly conduct statute must similarly be denied as prejudicial and futile.

## POINT IV

### MR. ROTHMAN'S NEWLY ASSERTED CLAIMS UNDER STATE AND FEDERAL LAW

The plaintiffs in Mr. Rothman's eight cases also assert new allegations in their amended complaints that defendants violated their constitutional rights pursuant to Section 1983 and state law.

First, plaintiffs claim their rights were violated due to defendants' failure to comply with the provisions of N.Y. C.P.L. §160.50 (fingerprint destruction). *See* Coburn Second Amended Complaint ¶¶131-133; Phillips First Amended Complaint ¶¶133-35; Sikelianos First Amended Complaint ¶¶119-121; Bastidas Second Amended Complaint ¶¶146-48; Xu Second Amended Complaint ¶¶146-48; Sloan Second Amended Complaint ¶¶140-42; Galitzer Second Amended Complaint ¶¶123-25; and Drescher First Amended Complaint ¶¶177-79. However, a violation of New York Criminal Procedure Law § 160.50 does not give rise to civil liability. Moore v. Dormin, 252 A.D. 2d 421, 425, 676 N.Y.S.2d 90, 93 (1st Dept. 1998) (upholding dismissal of civil claim for violation of CPL 160.50 because "the statute does not implicate constitutional considerations"). *See* State of New York v. Patterson, 78 N.Y.2d 711, 716, 579 N.Y.S.2d 617, 619 (Ct. App. 1991) (holding that a violation of CPL 160.50 does not infringe upon any constitutional right sufficient to warrant the invocation of the exclusionary rule); United States of America v. Schnitzer, 567 F.2d 536 (2d Cir. 1997) (on appeal upholding lower court's denial of the expungement of arrest record and the return of photographs protected by N.Y. Crim. Pro. Law §160.50). Further, the purpose behind New York Criminal Procedure Law §160.50 is to eliminate any "stigma" attached to having been accused of criminal behavior that was concluded in an individual's favor when that individual pursues employment, education, professional licensing and insurance opportunities. Compton v. Middaugh, 1995 U.S. Dist. LEXIS 20874, at *7 (N.D.N.Y. Sept. 26, 1995). Contrary to plaintiffs' assertions, the adequate remedy for any defendant whose criminal case terminated in their favor and who believes that his or her criminal record has not been properly sealed in accordance with law, is to seek the immediate sealing of the record before the appropriate criminal court. Plaintiffs'

motions to assert these new federal claims should be denied as futile for failure to state a cognizable Section 1983 claim.[22]

Second, plaintiffs in Mr. Rothman's eight case assert new allegations specifically against defendants Bloomberg and Kelly, alleging constitutional violations stemming from purported media statements and the denial of a permit to march in Central Park during the RNC. Although these allegations are asserted in the statement of facts of each proposed amended complaint, it is unclear from the pleadings whether they seek to incorporate them by reference into a cause of action, such that their motions to amend must be denied.

    1.    Alleged Public Statements Does Not Rise to Constitutional Violations

Plaintiffs' assert individual claims against Mayor Bloomberg and Commissioner Kelly alleging, *inter alia*, that they made public statements against them in which they were compared to "hard-core" and "dangerous" protestors and "terrorists" and "guilty" criminals.[23] Importantly, plaintiffs do not claim that Bloomberg and Kelly made any personal statements by naming any of the plaintiffs individually in the purported statements to the media, but rather speculate that general statements about anticipated protesting activities during the RNC led to plaintiffs' arrests and detentions, and caused them harm. Plaintiffs fail to state any claim against Bloomberg and Kelly based on such alleged statements. However, it has been widely held that verbal statements alone do not give rise to civil liability under Section 1983. *See* Bowles v. State of New York, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999) ("this Court notes that verbal harassment or threats alone do not

---

[22] Defendants do not believe there to exist any cognizable cause of action associated with violations of N.Y.C.P.L. §160.10, and will address those claims in their summary judgment motions.

[23] *See* Phillips First Amended Complaint at ¶65; Coburn Second Amended Complaint at ¶66; Drescher First Amended Complaint at ¶97; Bastidas Second Amended Complaint at ¶77; Xu Second Amended Complaint at ¶78; Sloan Second Amended Complaint at ¶64; Galitzer Second Amended Complaint at ¶58 and Sikelianos First Amended Complaint at ¶54.

constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. §1983"). Consequently, to the extent that plaintiffs in these eight cases seek to assert and incorporate the above allegations into causes of action, their motions to amend should be denied as futile.

### 2. Denial of Permits Is Not a Constitutional Violation

Further, the plaintiffs also allege that their rights were violated when defendants "discriminatorily and under false pretenses den[ied] the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004".[24] However, plaintiffs are barred under the principles of *res judicata* and/or collateral estoppel from asserting any claims and seeking any damages associated with the denial of issuing this specific permit. These issues have previously been litigated and resolved in state court, wherein it was held that the denial of this permit was determined solely on content neutral factors and not on any suggested discriminatory bases. *See* United for Peace and Justice v. Bloomberg, 5 Misc. 3d 845, 783 N.Y.S.2d 255 (Sup. Ct. N.Y. Co. 2004). Plaintiffs' allegations in these eight cases are therefore without merit, and any such motions to amend should be denied as futile.

---

[24] *See* Phillips First Amended Complaint at ¶66; Coburn Second Amended Complaint at ¶67; Drescher First Amended Complaint at ¶98; Bastidas Second Amended Complaint at ¶78; Xu Second Amended Complaint at ¶79; Sloan Second Amended Complaint at ¶65; Galitzer Second Amended Complaint at ¶59 and Sikelianos First Amended Complaint at ¶55.

**POINT V**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR
A VIOLATION OF THEIR CONSTITUTIONAL
RIGHT TO A FAIR TRIAL**

All plaintiffs in the 13 cases filed by Rose Weber, Esq. and the <u>Tikkun</u> case in which she is

co-counsel to Andrea Ritchie, Esq., purport to assert a due process claim alleging a violation of their

constitutional right to a fair trial.[25]  However, out of the approximately 150 plaintiffs in these 14

cases, only six of the plaintiffs actually had their criminal cases proceed to trial.[26]   All plaintiffs

whose criminal cases were either disposed of prior to any trial proceeding, accepted an ACD or

plead guilty (the approximately 144 plaintiffs) cannot bring any claims based upon a due process

violation of their constitutional rights to a fair trial.

It is axiomatic that in order to assert a constitutional due process violation resulting from an

unfair trial, evidence had to have been presented against that defendant at a criminal trial

proceeding.  To the extent that a plaintiff asserts that his pre-trial criminal prosecution was affected

or tainted in some way as a result of state action, claims of this nature are always construed as

claims for malicious prosecution under the Fourth Amendment. *See* <u>Albright v. Oliver</u>, 510 U.S.

266 (1994); <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 115 (2d Cir. 1995), *cert. denied*, 517 U.S.

1189 (1996) ("[t]he essence of malicious prosecution is the perversion of proper legal procedures");

<u>Lauro v. Charles</u>, 219 F.3d 202 (2d Cir. 2000) (claim regarding so-called "perp-walk" characterized

as Fourth Amendment violation and not due process claim); <u>Carroccia v. Anderson</u>, 249 F.Supp.2d

1016 (N.D. Ill. 2003) (plaintiff cannot recover for ten-day pretrial incarceration based upon

---

[25] See "Tenth Claim for Relief" in each proposed pleading.

[26] Only plaintiffs Emma Lang in the <u>Botbol</u> case; Kate Freitag in the <u>Bunim</u> case; Naomi Podber
and Lisa Ross in the <u>Crotty</u> case and Megan Cox and John Elfrank-Dana in the <u>Moran</u> case, had a
criminal trial.  Thus, there is no good faith basis to permit this amendment in 10 of these cases.

defendant police officers' concealing of evidence because "*pretrial deprivations are the exclusive domain of the Fourth Amendment*") (emphasis supplied) (*citing* Albright, 510 U.S. at 281-86). Accordingly, any plaintiff seeking damages as a result of allegedly impropriety engaged in by the individual defendants during pre-trial criminal proceedings, instead, must assert these allegations under a cause of action for malicious prosecution claim pursuant to the Fourth Amendment. Therefore, plaintiffs' motions to amend their complaints to add a due process claim alleging an unfair trial who in fact never went to trial, must be denied.[27]

---

[27] It is defendants' position that even those plaintiffs whose criminal cases proceeded to trial still fail to state a claim for due process violations, and will thus be addressed in the motions for summary judgment.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court deny plaintiffs' motions to amend as set forth above, with prejudice and, for any and other relief that this Court deems necessary and proper.

Dated:      New York, New York
            October 23, 2007

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the City of New York
                          100 Church Street
                          New York, NY 10007


          By: _____
                          Liora Jacobi [LJ 0347]
                          Special Assistant Corporation Counsel


          By: _____
                          Raju Sundaran [RS 8011]
                          Assistant Corporation Counsel