**EXHIBIT QQQ**

# In The Matter Of:

*KYLA HANNAH HERSHEY-WILSON v.*
*NEW YORK CITY*

---

*April 20, 2006*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 64kPherM.txt, Pages 1-39

**Word Index included with this Min-U-Script®**

Page 1

```
                    64kPherM
[1]     UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
[2]     ------------------------------x
[3]     KYLA HANNAH HERSHEY-WILSON,
[4]                  Plaintiff,
[5]             v.                    05 Cv. 7026 (KMK)
[6]     NEW YORK CITY, et. al.,,
[7]                  Defendants.
[8]     ------------------------------x
                                      New York, N.Y.
[9]                                   April 20, 2006
                                      11:30 a.m.
[10]
        Before:
[11]
                    HON. KENNETH M. KARAS,
[12]
                                      District Judge
[13]
```

Page 2

[1]   (In open court)
[2]   MR. MEYERSON: Good morning, your Honor, James
[3] Meyerson for Ms. Hershey-Wilson.
[4]   THE COURT: Good morning, Mr. Meyerson.
[5]   MR. DOUGHERTY: Good morning, Jeff Dougherty for
[6] defendants.
[7]   THE COURT: You got the call on this one, Mr.
[8] Dougherty.
[9]   MR. MIRRO: And James Mirro.
[10]   THE COURT: Good morning, your Honor. Again, for the
[11] record. This is becoming a habit. There are worse habits in
[12] life.
[13]   I have to say, Mr. Meyerson, I was struck your
[14] reply --
[15]   MR. MEYERSON: -- I don't know if that's good or bad.
[16]   THE COURT: It's sort of interesting. There is this
[17] sort of righteous speech-like tone to you. You sort of have to
[18] live by the privilege and die by the privilege.
[19]   And you are very critical of the city's invocation of
[20] certain privileges relating to their office -- psych testing
[21] records are sought by the plaintiff. And misconduct.
[22] Invariably the city's attorneys object to what I was saying
[23] before; that's true.
[24]   You were here six, seven weeks ago when they wanted to
[25] invoke certain privileges having to do with unsubstantiated

Page 3

[1] claims of misconduct and other, arguably, privileged
[2] information. And I ended up agreeing with you that Judge
[3] Francis's rulings were not clearly erroneous or contrary to
[4] law. I was just struck by that.
[5]   The city gets a five-point demerit for citing an
[6] unpublished Second Circuit decision
[7]   MR. MIRRO: The Supreme Court ruled --
[8]   THE COURT: -- the Judicial Conference said that as of
[9] 2007, it is okay to cite unpublished opinions. But just be
[10] careful because there are some people in the building who might
[11] get pretty hot under the collar.
[12]   MR. MIRRO: We will, your Honor.
[13]   THE COURT: Quick question for Mr. Dougherty. I will
[14] definitely hear from you, Mr. Meyerson.
[15]   What is the standard of review where, what Judge
[16] Francis did was said that my ruling in MacNamara precluded him
[17] from, in effect, agreeing with Mr. Meyerson?
[18]   So what we have is a situation, before the case gets
[19] referred to a Magistrate Judge for discovery purposes, I issue
[20] a discovery ruling in another case, albeit, one that's related,
[21] which is why I got a hundred of these things. And Judge
[22] Francis feels bound by that ruling in this case. And then Mr.
[23] Meyerson appeals that ruling.
[24]   Is it Rule 72, abuse of discretion and contrary to
[25] law?

Page 4

[1]   MR. DOUGHERTY: Your Honor, I would submit that in our
[2] papers to Judge Francis, while I can't determine what it is
[3] that, you know, ultimately determined his rationale, that we
[4] did submit case law as well as transcripts from your ruling in
[5] MacNamara. And I believe this is a Rule 72 motion to be
[6] governed by the earlier clearly erroneous standard or contrary
[7] to law standard, whether or not at this level a discovery
[8] motion can be overturned.
[9]   THE COURT: His memo endorsement says that he felt --
[10] and I had it out a second ago, let me pull it out -- Judge
[11] Kara's prior ruling on this issue precludes the arguments now
[12] raised by plaintiff's counsel.
[13]   So it is sort of a, what he said in another case,
[14] which Judge Francis almost seems to be saying was law of the
[15] case for all of these cases.
[16]   So why is that something that should be deferred to
[17] when, in effect, he is citing my ruling in another case?
[18]   It is like saying I should refer to my own ruling in a
[19] different case.
[20]   MR. DOUGHERTY: I would say it is just as proper for
[21] any Magistrate Judge to reply on a Southern District judge in a
[22] related action or a nonconsolidated.
[23]   THE COURT: But not necessarily to have preclusive
[24] effect, right?
[25]   MR. DOUGHERTY: Yes.

Page 5

[1] THE COURT: Do you think that the MacNamara ruling has
[2] a preclusive effect in this case?
[3] MR. DOUGHERTY: I think that ruling was likely here
[4] considered by Magistrate Francis and was part of what is
[5] probably a conglomerate of facts that, of law, that he used to
[6] make the decision in the MacNamara case.
[7] THE COURT: Thank you.
[8] Mr. Meyerson.
[9] MR. MEYERSON: Your Honor, I do apologize for any
[10] righteousness that --
[11] THE COURT: -- don't apologize for righteousness.
[12] MR. MEYERSON: Actually, I believe it came out, I
[13] think there was a, I am saying righteous indignation on my
[14] part. My client, Ms. Hershey-Wilson is 21 years old, and I
[15] kept thinking of my 21-year-old daughter who happens to be an
[16] activist.
[17] THE COURT: I believe that was worth saying. I was
[18] only tweaking you.
[19] You are right, what goes around comes around.
[20] To the extent that the defendant takes what you think
[21] is a cavalier attitude toward your client's privilege, my only
[22] point is, at least Judge Francis and I agreed with you to their
[23] privilege.
[24] MR. MEYERSON: I understand.
[25] This is a very narrow issue, your Honor. Although I

Page 6

[1] think it has profound practical and profound legal
[2] implications.
[3] The narrow issue is what triggers the waiver of a
[4] client's mental health record privilege that pre -- the records
[5] coming from a prelitigation-incident therapy.
[6] You, in MacNamara, I think that's a question of law.
[7] And I think that Magistrate Judge Francis, on both a legal and
[8] practical and differential basis, said to himself, look,
[9] whatever I think of Meyerson's arguments, and however I might
[10] have ruled, I am not going to write an opinion because whatever
[11] I think, Judge Karas has sent all of these cases to me and I am
[12] not going to buck Judge Karas because he made a ruling in a
[13] previous case which has indicated his position of law on this
[14] matter. And, therefore, I am precluded from overruling Judge
[15] Karas. He can overrule me, I can't overrule him. Fair enough.
[16] I then file this appeal and say to you, your Honor,
[17] that with due respect, I am critical, and I accept this with
[18] whatever admonition you want to give me, I am critical of your
[19] MacNamara decision.
[20] And it is like I recently said to the Second Circuit
[21] about Judge Koeltl, that I realize that the Second Circuit
[22] recognized his wisdom as a jurist, as I do your wisdom as a
[23] jurist. You are just wrong, I think, on what you did in
[24] MacNamara.
[25] THE COURT: No offense to Judge Koeltl.

Page 7

[1] MR. MEYERSON: No. And I got him reversed.
[2] THE COURT: He is a great jurist. Go ahead.
[3] MR. MEYERSON: And that's not due to me. That was
[4] because I was lucky that day in front of the circuit.
[5] But the point I want to make here is, you have taken a
[6] very broad view in MacNamara of what emotional damage claims
[7] mean in reality and in law.
[8] My client, let me give you these facts, and I just,
[9] you have seen them, but my client is 24 years old. At 24 she
[10] is arrested at the RNC.
[11] When she was in high school, she and her family went
[12] to family counseling. She may have gone to independent
[13] counselling. The therapist said, you are depressed, here is
[14] some medication.
[15] She graduates from high school, has no medication or
[16] therapy for four years, gets arrested at the RNC and,
[17] basically, says, I have a natural emotional reaction when I am
[18] in jail for 24 hours. That is my emotional reaction. Has
[19] nothing to do with my mental health condition. I was scared, I
[20] was sad, I was anxious. And I got out 25 hours later. I took
[21] in the fresh air, I sighed. And it largely evaporated, all
[22] though not totally. I went to Dr. Ores before I went back to
[23] Maine. You can have my records from Dr. Orres. I am okay. I
[24] am not seeking to put into this record, in that litigation, my
[25] mental health condition. I am not going to call a

Page 8

[1] psychiatrist, I am not going to say I have a permanent
[2] condition, a clinical or nonclinical condition.
[3] THE COURT: Paragraph 71, quote, the plaintiff
[4] denies -- of the incident herein described --
[5] MR. MEYERSON: -- I accept that as my failure in
[6] developing the case. We say that's not the case. In point of
[7] fact, the facts are the facts. She never has sought treatment.
[8] THE COURT: The fact that she hasn't sought treatment,
[9] that wouldn't be a cause to bounce that claim.
[10] MR. MEYERSON: I am standing up here and saying to you
[11] that my client will get on the witness stand at the trial and
[12] say, when I say, what emotional injury did you suffer -- well,
[13] let me withdraw that.
[14] Assuming my client just got on the witness stand and
[15] said, I was in jail for 25 hours, and I didn't ask her another
[16] question about any emotional reaction injury, and then I said
[17] to a jury, she was in custody 25 hours, you should award her a
[18] sum of money for the loss of her liberty, either for 25 hours
[19] taken, anxiety and sadness she felt, objection, your Honor,
[20] there is no evidence in the record.
[21] Okay, so I want to ask her, what was your emotional
[22] reaction injury?
[23] And she will say, I was sad, I was unhappy, I was
[24] scared.
[25] And when did that end?

Page 9

[1] It ended largely when I got out of jail. But I went
[2] to somebody who said the records will show probably you will be
[3] all right. Just go home.
[4] **THE COURT:** Let me just stop you right there.
[5] Even if she is claiming residual emotional injuries,
[6] such that she went to, after the fact, see a therapist of some
[7] kind, and even at the end of the day if, as a result of seeing
[8] the therapist things get better in her life, again we are not
[9] here at trial deciding what they get to put in. The question
[10] is whether or not anything about her psychological history, her
[11] mental health history -- she was 65 and had high school visits
[12] to a therapist, is that different?
[13] That's why you have to be careful with my ruling in
[14] MacNamara. Once that door is even cracked open a little bit,
[15] how can it be that the defendants don't get to have access to
[16] her psychological history to rebut either the claim for the
[17] injuries at all or the extent of the damages she should get as
[18] a result of the alleged injury?
[19] **MR. MEYERSON:** If --
[20] **THE COURT:** By the way, that's the majority view of
[21] the courts in this district.
[22] **MR. MEYERSON:** Actually not the majority view of
[23] courts throughout the country, it is the view of courts
[24] throughout this district, which comes out of Judge Buchwald's
[25] decision when she was a magistrate. Rather, it is a more

Page 11

[1] psychiatrist to look at her, the law in this district, if they
[2] would argue that, is, you can't do that because this is really
[3] a garden-variety thing.
[4] And if that's the case, what is the value of the
[5] records except to fish into the most highly sensitive material
[6] that -- my client doesn't even know what's in there, that no
[7] magistrate should look at. That I don't want to look at.
[8] And my position is, therefore, that if she couldn't be
[9] subjected to an examination by a psychiatrist to disprove
[10] something that we are not even attempting to prove, then there
[11] is no basis for the records.
[12] And if you want to make a thing out of, did she have
[13] psychiatric treatment five years ago in high school?
[14] She has admitted that.
[15] She has also admitted that she had medication for
[16] depression and family counseling.
[17] I don't know what the litigation value would be of
[18] bringing that out in front of a jury, because a jury would be
[19] offended by that.
[20] But if the city wanted to do that, and you let --
[21] **THE COURT:** -- that's a different question. We are at
[22] discovery.
[23] **MR. MEYERSON:** That's correct. So what is the value
[24] of the records? We must again get to the point, Judge, of
[25] these records are ordinarily privileged.

Page 10

[1] complex claim in which the views of psychiatrists figured
[2] prominently in prelitigation events.
[3] That is that there was a connection obviously made in
[4] Sidor between the prelitigation therapy that that client had,
[5] leading Magistrate Buchwald to conclude that there -- that
[6] access to those records were relevant. There has to be some
[7] degree of time and material relevance.
[8] And your prior ruling simply --
[9] **THE COURT::** -- forget the prior ruling. Let's talk
[10] about this case.
[11] **MR. MEYERSON:** But the problem is, Magistrate Judge
[12] Francis seems to have implied that whatever the merits of your
[13] arguments, Meyerson, that I might agree with, I can't touch it
[14] because I am reading Judge Karas's ruling --
[15] **THE COURT:** -- argue it as if the standard review was
[16] de novo.
[17] **MR. MEYERSON:** Okay. Here is my response to you.
[18] At the same time the law in this district, as you
[19] interpret it, seems to suggest that access to those records are
[20] permissible because she, by merely saying I had emotional
[21] reaction for the time of the event, triggers the waiver.
[22] The law in this district also seems to suggest, by
[23] Judge Carter and Judge Sotomayor, when she was a District
[24] Judge, is that when the city then says, and I will get to the
[25] logic of it, we want to take her examination, we want a

Page 12

[1] What triggers the waiver of the privilege, that is the
[2] narrowest -- that's the very narrow issue of law. And if you
[3] say that what triggers it is simply the fact that a client that
[4] is put into jail for 25 hours and would testify, forget what I
[5] put in my complaint, if you can, for the moment, would simply
[6] testify, look, when I was in jail I was upset.
[7] **THE COURT:** And give me money for that, right?
[8] **MR. MEYERSON:** Well --
[9] **THE COURT:** -- and give me money.
[10] **MR. MEYERSON:** That is correct.
[11] **THE COURT:** And how is it that the defendants are to
[12] prepare their defense, to rebut any claim you might make as to
[13] why she should get any money or why she should get a certain
[14] amount --
[15] **MR. MEYERSON:** -- Judge, it seems to me that you are
[16] seemingly bootstrapping yourself into almost -- almost into a
[17] nonsensical position.
[18] **THE COURT:** I am surprised to hear you say that.
[19] Because every case I have read, and I have read a bunch, in
[20] addition to the ones you cited me to, to the extent that courts
[21] have said that the privilege is waived even into the so-called
[22] garden variety claims, not a term of art as far as I can tell,
[23] but that's the one that everyone seems to be using, but the
[24] reason it is relevant, so that the defendants can attack the
[25] causation between the offending event and the so-called mental

Page 13

distress. And also the claim for damages.

I am not making this up.

**MR. MEYERSON:** I understand that. And then I say to you, what do you expect to find in mental health records of a high school kid?

Perhaps the high school kid might have said, gee, you know, I am depressed. And in five years if I get arrested, what will happen to me, doc? Will I be -- what conceivable relevance beyond the fact, if it is relevant at all, that she has had therapy, had medication, and that ceased to exist four years ago? If that's relevant, fine.

**THE COURT:** Because when somebody claims to have suffered some sort of emotional damage, distress, anxiety, depression, their prior history, that might relate to this -- we are going in circles.

**MR. MEYERSON:** Can I give you another example?

**THE COURT:** Let me give you another example.

Let's take it out of mental health, put it in physical health.

Somebody goes to a hospital and they decide to involuntarily commit the person. And in the middle of him struggling he yells out, ouch, my knee. And he doesn't put in any expert testimony that he actually ripped his meniscus, medial meniscus, or anything like that. He says, I want money for pain and suffering because my leg got hurt that day. And

Page 14

it turns out that 20 years prior to that he saw an orthopedic surgeon.

**MR. MEYERSON:** For a knee injury?

**THE COURT:** Yes.

**MR. MEYERSON:** He is entitled probably -- they are probably entitled to get those records.

Here is where we are having our debate. And it is a fascinating debate, I tried to make it in my submission.

You are equating an emotional reaction to being in jail for 24 hours, which is attended to the loss of the liberty itself. It's almost intrinsic in it.

I mean, I did have a client, a Quaker, an older man who, when he was asked at a deposition by the City of New York what his reaction was to being in jail for 24 hours, as the good Quaker he was, he said, actually, it was an enlightening experience. And he actually wrote to the Quaker paper.

Again, it brings up a lot with my daughter, she went to a Quaker school.

But he wrote to the Quaker paper. And I said to myself, you just indicated you didn't have any damages for being in there.

The point being, most people, in being confined for 24 hours involuntarily in a not-pleasant situation, might say, I was sad, I was upset, I was scared. And then I say --

**THE COURT:** -- that's not how the complaint is worded.

Page 15

It is not limited to that.

**MR. MEYERSON:** But --

**THE COURT:** -- what you are trying to do --

**MR. MEYERSON:** -- I am now limiting it.

**THE COURT:** Mr. Meyerson, there is a complaint that you filed. You have brought actions against defendants. And you are seeking damages for emotional distress and anxiety. And you are trying to, at the same time, asking potentially for damages on those emotional harms. You are trying to put a wall on someone's emotional slash mental history and what they suffered on that day.

**MR. MEYERSON:** I am not --

**THE COURT:** -- Mr. Meyerson, interrupting is not helpful to anybody. I never put time limits on you. Don't do that.

**MR. MEYERSON:** I'm sorry.

**THE COURT:** But that strikes me as antithetical to common sense. And many courts around the country have said, you cannot pretend that a person's mental past has nothing to do, is completely irrelevant, and all the standards that we use -- and there is no conceivable relevance to the emotional slash mental harm that somebody suffered on that day.

And you cannot ask the defendants to defend themselves on causation and on the extent of the damages without getting access to that information.

Page 16

Now, that is not to say that there cannot be limits. That is not to say that every record gets turned over. That is not to say that there are temporal decisions here.

You have a 24-year-old client, not a 74-year-old client. So her high school records -- I wouldn't say, if I was Judge Pitman, to a five-year limitation. But the reason for the limitation is that it recognizes that within that time period it is not -- say there is no reasonable relevance of the records -- go ahead.

**MR. MEYERSON:** There are two things you mentioned in there. One is the complaint and one is the moreover arching philosophical debate we are having --

**THE COURT:** -- I don't do philosophy, Mr. Meyerson. I am doing law.

**MR. MEYERSON:** Philosophical legal debate that we are having, which is not inconsequential.

The first thing about the complaint is to the extent that I drafted a complaint that defined, that says what it says.

Of course, an attorney and a party can come in and say, I withdraw the lawsuit, I withdraw this claim. I narrow this to the extent of a claim.

And to the extent that I have failed my client in the manner of the drafting of the complaint, in the amended complaint, to make it an -- that there is this all encompassing

Page 1

**THE COURT:** Because she is only six years removed from high school. If she were 74 years old and it was high school records, you might have a point. Which is why many courts have accepted, in part, your argument.

But they tailor it to the facts before them. And that's what I am trying to do, and say, that whether or not MacNamara was the right decision or not, I am focused on this case.

**MR. MEYERSON:** Okay. Well, I would ask you, then, to defer back to Magistrate Judge Francis, and let me make the arguments to Magistrate Judge Francis on the assumption, as I read his decision, that he did not even waive the arguments, simply said, I am precluded.

And it is understandable why he did that.

My last point and I will sit down, and it is, by comparison, not a knee injury, but more directly in point.

In an antiwar demonstration case that I have with the city, a client was in custody seven or eight hours. She was an NYU student. A freshman then.

She'd had counseling when she went to NYU. She said that during the seven or eight hours she was on and off crying, the next day she was upset. And that's the extent of her emotional injury associated with what she believed was a false arrest and loss of her liberty.

The city didn't ask for the mental health records in

Page 17

emotional trauma that flows from this event, I stand indicted. But I withdraw that. And my client has narrowed the claim. And the claim is simply that while I was incarcerated, and for a day or two thereafter, I had the ordinary natural reaction. Which I assume --

**THE COURT:** -- she says is ordinary and natural. But how is it that a jury is to evaluate what she says is ordinary unless they know something potentially about her emotional past?

You know, New York law recognizes the thin skull doctrine for psychological harms not recognized by the Second Circuit. But there are plenty of cases within New York State that recognize it.

It is interesting because that could easily inure to the plaintiff in these kinds of cases.

I don't want to get into philosophy.

**MR. MEYERSON:** This is a legal argument, your Honor. What I import from your comment, that I listened to very carefully, and I apologize for interrupting, although I did hear what you are saying, is, how do you know what is, and I understand what you are saying, inquiring, how do I know that that's natural?

The natural flow of that inquiry leads to them getting records, because, you will say, get these records; and them saying, oh, but irrespective of the records, she shouldn't have

Page 18

had this reaction. Or maybe because of the fact that she concedes she had depression, that's why she had the reaction. Your Honor, we need to have her go to our psychiatrist for several hours.

And Mr. Meyerson now needs to put on a psychiatrist so that the jury can be -- so it can be explained to a jury that intrinsic in being restrained of your liberty for 24 hours in a jail, is a natural reaction of, whatever it might be, might even be giddiness, but in this case it was sadness.

I just think, your Honor -- by the way, I believe the law in this district is that they wouldn't be able to get that mental health --

**THE COURT::** -- why are we having a discussion about something that is not on the table right now? Because the cases do recognize the distinction between a defendant's interest in getting past mental health history of a plaintiff, either an employment discrimination case, a civil rights case, and a rule --

**MR. MEYERSON:** -- at least --

**THE COURT:** -- according to the cases that I read, let's --

**MR. MEYERSON:** -- but I think they are inner related, because if, in fact, you can't get the examination, what does the value of a record that says she was depressed in high school have to do with her saying, I was afraid --

Page 20

that case. That's neither here nor there, that's that litigation. But the import of your decision is, that if my client had come in and said, look, I had no emotional damages other than the fact that when I was in custody I cried on and off, the next day I related to my family what happened, and I was upset. And that was it. That they then -- that triggers a waiver to open everything and anything.

And if you are fortunate to be a young kid, an 18-year-old freshman at NYU, or a 24-year old -- if you are unfortunate enough, maybe, to be 24 and had gone to a shrink when your family sent you to a shrink, when you were in high school, the unfortunate situation, under Judge Karas's ruling, is that if you were 74 you wouldn't have to give up those records, but at 24 you do. It doesn't make any sense. And maybe the law --

**THE COURT:** What you are saying is it is never relevant. What I am saying, it depends on the case.

Do you think the blanket rule is never relevant and they take the --

**MR. MEYERSON:** -- there are Courts that have taken that position. Your Honor, please, with due respect, I respect your broad ruling, it is a very broad ruling, but --

**THE COURT:** I haven't ruled yet.

**MR. MEYERSON:** Well, in MacNamara, there it's a broad ruling.

Page 21

[1] THE COURT: It is not a broad ruling. It's actually
[2] not a broad ruling. But doesn't matter, we are not here to
[3] reopen MacNamara.
[4] MR. MEYERSON: There are cases that reject your
[5] position, that say --
[6] THE COURT:: -- it wouldn't be the first time. Or the
[7] last.
[8] MR. MEYERSON: That say that the emotional reaction
[9] condition that I am describing here doesn't put in to play her
[10] mental health condition, which is a different thing, as a
[11] matter of law, that is what I am arguing.
[12] THE COURT: Okay. Thank you, Mr. Meyerson.
[13] MR. DOUGHERTY: Well, your Honor, what, at first what
[14] I think we need to do is pull back and realize that we are in a
[15] court of law. And subsequently we are governed by rules of
[16] procedure.
[17] And here the rule that we are governed by is the
[18] standard under Rule 72.
[19] And under that standard, and under the case law
[20] governing that standard, Mr. Meyerson has failed to show that
[21] Judge Francis's ruling was either clearly erroneous or contrary
[22] to law.
[23] And just briefly on the clearly erroneous point.
[24] Under Lindenal versus Citco Refining, the reviewing Court has
[25] to be left with the definite and confirm conviction that a

Page 22

[1] mistake has been committed.
[2] Additionally, Mr. Meyerson has failed to establish
[3] that Judge Francis failed to apply relevant case law or
[4] statutes, that that is the standard of review that this Court
[5] should be governed by making its determination on this motion.
[6] And just to get into the merits, the reason that
[7] Ms. Hershey-Wilson's psychological history is relevant and
[8] discoverable, is because she put it at issue by claiming and
[9] seeking emotional distress damages.
[10] We are governed by the complaint which suggests that
[11] there are residual effects that she suffered as a result of her
[12] arrest, which was a sworn statement as well as interrogatory
[13] responses, indicate that in interrogatory 5 she suffered
[14] emotional distress, mental anguish, fear, psychological trauma.
[15] Because of that, it is clear -- and she is seeking
[16] damages, money damages, which would ultimately come from the
[17] taxpayers of New York for those damages which the city must be
[18] allowed an opportunity to examine intervening causation of her
[19] emotional distress, and obtain a picture of her psychological
[20] history.
[21] And one of the things that is also relevant, I would
[22] like to point out, is that the records we are seeking are
[23] contemporaneously relevant to her arrest. She was 24 at the
[24] time. The records reach back maybe four or five years. And
[25] under Judge Pitman's ruling in McKenna, he allowed in

Page 23

[1] psychological history that reached back five years, which is
[2] the same time frame that we are working with here.
[3] MR. MIRRO: Judge, if I may, just to add one or two
[4] brief points.
[5] THE COURT: Yes.
[6] MR. MIRRO: First, I want to thank you, Judge, for
[7] your patience today.
[8] A couple of points I wanted to mention, Judge. First,
[9] you asked earlier about the standard of review and Judge
[10] Francis's order.
[11] I would like to emphasize, Judge, Judge Francis had
[12] before him all of the factual materials and all of the factual
[13] arguments that we are making today.
[14] In addition, Judge Francis had before him the legal
[15] authorities that we submitted to your Honor. So Judge
[16] Francis's decision and Judge Francis's order, were based on
[17] both the facts and on the law.
[18] And in that situation, I would submit to you, Judge,
[19] that the standard here is, as Mr. Dougherty has said, is the
[20] clearly reasonable standard.
[21] This is not a case where the Judge Francis has made up
[22] purely a determination based on purely legal principles that
[23] might be a de novo, might be subject to de novo review by this
[24] Court. This decision was based on both facts and the law. And
[25] citation.

Page 24

[1] Maybe there is language in that order that suggests,
[2] loose language in the order, that suggests otherwise. But
[3] that's what was in front of him. And we would submit that
[4] Judge Francis couldn't have made a determination that your
[5] Honor's decision in MacNamara was pervasive unless he
[6] considered the factual underpinnings.
[7] The only other point, Judge, that I wanted to make at
[8] this point, the question of relevance has come up.
[9] Your Honor clearly understands what the issue is here.
[10] And the issue is, and as Mr. Dougherty said, the issue is one
[11] of causation.
[12] Mr. Meyerson's client is suing us for money due to
[13] emotional, claimed emotional distress, that results in waiver.
[14] And the reason that the emotional history, the psychological
[15] history are relevant, because we are entitled, as the Court has
[16] alluded to several times today, to examine this plaintiff on
[17] what alternative causes of emotional distress she may have been
[18] suffering at the time of her arrest and after her arrest.
[19] Your Honor, the principle here is that defendants are
[20] not obligated to take plaintiff's word for it, that her
[21] emotional distress was caused solely by the arrest and
[22] confinement.
[23] We understand that counsel -- plaintiff's counsel made
[24] a very fine argument, and we understand that he is advocating
[25] on behalf of his client. But we are not obligated, and it is

Page 25

[1] contrary to the discovery rules to suggest that we are
[2] obligated, to take plaintiff's word for it on the causation
[3] question with respect to her emotional distress. And it goes
[4] to damages as well.
[5]     I think that is the sum and substance of it, Judge.
[6] And, obviously, there is just a wealth of authority supporting
[7] both the MacNamara decision and the ruling that we are seeking
[8] here.
[9]     I mean, and let's look at it, just one other point,
[10] one other point. Mr. Meyerson has not put in, really, any
[11] legal authority of substance. He got a wealth of authority
[12] from outside the district that obviously doesn't bind the
[13] Court. But he hasn't explained why this case is any different
[14] from all the decisions that do bind this Court, including
[15] Second Circuit opinions.
[16]     And I think I will leave it at that.
[17]     **THE COURT:** Sure. Mr. Meyerson, you get the last
[18] word.
[19]     **MR. MEYERSON:** One, Mr. Dougherty talked about
[20] intervening causation. This is a preexisting causation, and I
[21] would agree with him, that if we were dealing with an
[22] intervening causation, that is that there had been the arrest,
[23] she said this, and then afterwards some other incident
[24] occurred, then it becomes -- and she sought treatment for that,
[25] we then have that intervening causation.

Page 26

[1]     Number 2, with all due respect to the city, in
[2] substance, they are ruled -- that Judge Francis was ruled by
[3] MacNamara, whether or not you were limiting it to -- he was
[4] precluding it to where he could go or not go on this matter.
[5]     Finally, to the extent that the city wants to put into
[6] play the fact that she had a preexisting condition for which
[7] she sought treatment, they have the facts. I did not direct
[8] her not to answer, or -- she hasn't been deposed yet, but they
[9] know that she has, and she would answer, she had -- I guess it
[10] came out of her 58-H hearing. She did say, I had treatment, it
[11] was for depression, in family counseling.
[12]     To the extent that they want to bring to the jury that
[13] there were other matters that implicated her actions, and the
[14] information in the records isn't going to elucidate anything.
[15]     Thank you, your Honor. I apologize and I appreciate
[16] your indulgence.
[17]     **MR. DOUGHERTY:** On the issue of causation, actually,
[18] one of the cases cited by Mr. Meyerson, Bridge v. Eastman
[19] Kodak, there was language in that case, on page 223, saying
[20] that, moreover, since plaintiff seeks to prove they suffered
[21] emotional distress, defense counsel has the right to inquire
[22] into plaintiff's past for showing, at least in part, that they
[23] were not job related.
[24]     That case dealt with Title VII sexual harassment.
[25] But it should be considered in this case as well.

Page 2

[1]     **THE COURT::** I don't know that Rule 72 applies here,
[2] but I know, for it doesn't make sense to send it back to Judge
[3] Francis because then the losers are going to come back to me
[4] anyway. So whether or not it is de novo review or discretion,
[5] I would assume it is de novo review. Not that I think Judge
[6] Francis did anything wrong.
[7]     Rule 26 provision for liberal discovery, anything that
[8] is relevant to, conservativebly relevant to the case that can
[9] lead to admissible evidence, the parties are entitled to Rule
[10] 26. And the law recognizes privileges.
[11]     But the law also disfavors privilege because they
[12] destruct the ascertainment of the truth. And, therefore, the
[13] law recognizes that in certain situations, when a plaintiff
[14] makes certain claims related to medical damages or mental
[15] health damages, then the plaintiff can be deemed to have waived
[16] the applicable privileges.
[17]     Now, let me say, just so it is crystal clear for the
[18] record, I don't feel bound by what I ruled in MacNamara,
[19] because these are evidentiary rulings. These are discovery
[20] rulings. These are not matters of first impression where the
[21] principle is unaffected by the facts of the particular case.
[22]     So it is true that the city put forth legal arguments
[23] in addition to my ruling in MacNamara. And whether Judge
[24] Francis felt he was bound by that ruling or he was persuaded by
[25] it, is of no import to this case. MacNamara is MacNamara, this

Page 28

[1] case is this case.
[2]     Now, in terms of this case, we have a 24-year-old
[3] plaintiff who has claimed, both in her complaint and in her
[4] interrogatory responses, which presumably she can't blame Mr.
[5] Meyerson for, that she suffered emotional distress,
[6] psychological trauma, fear, humiliation, embarrassment and
[7] anxiety.
[8]     She went to see a doctor. And in the complaint she
[9] alleges that she continues to suffer residual emotional
[10] damages.
[11]     Now, Mr. Meyerson may want to selectively withdraw
[12] that one sentence from the complaint. But her interrogatory
[13] answers are it. That is it. That is what she is claiming.
[14]     And she would then ask a jury to award her damages,
[15] presumably not an insignificant amount of damages, based on
[16] those injuries.
[17]     Now, some might call those garden variety. Some have
[18] described precisely those kind of damages being more than
[19] garden variety.
[20]     I haven't read a case that gives the precise
[21] definition of what garden variety is.
[22]     It has been my experience that garden variety is part
[23] in the eye of the beholder, but even assuming it is a garden
[24] variety claim, I am persuaded by the cases, not just in this
[25] district, but around the country, that have found that

Page 29

[1] precisely such claims waive the privilege to some extent.
[2] Because I do think, to the extent that somebody is claiming,
[3] for example, psychological trauma, even if she doesn't intend
[4] to substantiate the claim, or to quantify her damages through
[5] the use of an expert, just based on her own testimony of what
[6] she felt, what she felt she was harmed by, what emotional pain
[7] and suffering she claims to have been inflicted upon her, opens
[8] the door to the possibility that the defendant should be
[9] allowed to explore either alternate causes for such
[10] psychological trauma and other mental health damages, and also
[11] to rebut the claim for the amount of damages that the plaintiff
[12] might seek from a jury.
[13]     And the cases that discuss this, discuss it in a wide
[14] variety of contexts, employment discrimination, and civil
[15] rights, and specifically describe them as garden variety cases,
[16] and specifically note that the plaintiff is not claiming to
[17] rely on an expert to substantiate the claim for mental health
[18] damages.
[19]     But the fact that plaintiff isn't saying,
[20] notwithstanding what is in her complaint, that she continues to
[21] suffer from these things, that may just go to the amount of
[22] damages she gets, it doesn't change the fact that she is
[23] alleging that the wrong done to her allegedly by the
[24] defendants, caused her mental health harms.
[25]     And it cannot be redressed as emotional distress, and

Page 30

[1] somehow pretend it is in in another category where there is no
[2] relevance between somebody's mental health history and the
[3] emotional distress that somebody claims to have suffered.
[4]     And that is what the cases talk about. I am not going
[5] to list them all. Some of the ones are the ones listed in the
[6] city's papers. But I have read cases, there is a recent case
[7] from the Eastern District of Michigan that goes through the law
[8] on this.
[9]     For the record, of course, I reviewed the McKenna
[10] case. I reviewed the Sidor case, which Judge Buchwald does
[11] say, even if it is garden variety, that it does open the door.
[12]     There is a case called Williams versus NPC
[13] International from the Northern District of Mississippi. There
[14] is a case called Victoria versus Larkinder from the Eastern
[15] District of Louisiana, Synbios. S-Y-N-B-I-O-S. Another
[16] Colorado case called Fox versus The Gates Corporation.
[17] District of Connecticut case called Gattegno, G-A-T-T-E-G-N-O,
[18] versus Price Waterhouse Coopers LLP.
[19]     And, by the way, so everybody's clear, none of this
[20] means that if the defendant wants to do a Rule 35 examination,
[21] that this ruling is a per se basis for them to get that. We
[22] will have that fight if and when the defendant makes that
[23] application.
[24]     Now, I do think that, as Judge Pitman recognized, and
[25] I think he is right, that this doesn't mean that the privilege

Page 31

[1] is waived in its entirety. It depends on the case. It depends
[2] on the claim, it depends on the extent of the mental health
[3] history that, in part, may depend on, for example, the length
[4] of time between when somebody may have sought psychiatric
[5] health or suffered from some sought of emotional disease. Even
[6] and when the alleged injury took place.
[7]     Here, even a five-year limitation, so the defendant
[8] would not be allowed to go back further than five years into
[9] plaintiff's mental health history, wouldn't change anything
[10] because, as I understand it, a lot of the data is within the
[11] five years. But I am not saying that five-year rule makes
[12] sense here. I am saying that a 24-year old isn't getting any
[13] comfort.
[14]     I think what happened to her in high school and
[15] college is relevant to what she is claiming in this case.
[16]     And, Mr. Meyerson, I don't take lightly at all your
[17] philosophical point. I understand this may put people like
[18] your client in a potential dilemma, but that is what the law
[19] does to your client's position. It is not just your client, it
[20] is people alleging all kinds of mental health allegations. It
[21] involves things in people's medical history that they don't
[22] want revealed. But the law says they have to make a choice.
[23] If they want to recover money for these types of injuries, then
[24] they have to be prepared under these circumstances to
[25] recognize, to properly allow the defendants to rebut the claim,

Page 32

[1] either in terms of causation or in damages, that they are going
[2] to get peeked into that person's mental history, as in this
[3] case.
[4]     So I am affirming Judge Francis's ruling, even on the
[5] de novo standard.
[6]     MR. MEYERSON: Could I have the records before they
[7] are sent to the city reviewed by Magistrate Judge Francis?
[8]     THE COURT: Yes, thank you for reminding me of that.
[9] It is something I did in MacNamara.
[10]     If it is something, even in the context of
[11] psychological records that would appear to be super sensitive,
[12] for example, if there is something that comes up in an
[13] evaluation by a doctor, that came up in a conversation with a
[14] doctor, but really isn't relevant to the damages claimed here,
[15] I don't want to give an example because I wouldn't want to
[16] impugn your client, I wouldn't see a problem if you want to
[17] have Judge Francis review them in camera first.
[18]     I do think you should be judicious in using that tool.
[19]     MR. MEYERSON: Do I understand -- my understanding is
[20] that my client went to high school and lived in Portland. So I
[21] don't even -- I get to her name of her family counselor,
[22] psychiatrist, co-therapist, whoever it was. I will get an
[23] authorization from my client and I will send for the records
[24] and ask them to be delivered to Magistrate Judge Francis, I
[25] guess.

Page 33

[1] THE COURT: But that is precisely what I was
[2] suggesting I don't think you should do. Because what you are
[3] saying is that -- all of these records are so sensitive they
[4] should be reviewed in camera.
[5] MR. MEYERSON: I don't know. I don't even think --
[6] THE COURT: -- I know that you can take an appeal if
[7] you want.
[8] MR. MEYERSON: Well, then, I will get the records
[9] under your order, I will review them understanding your order
[10] is that I shouldn't just be knee jerk about it and make a
[11] judgment as to whether I think there is something in there that
[12] is of super sensitivity. For example, the topic of an
[13] incestuous thing, I am not suggesting that that is in there.
[14] THE COURT: What if, in the course of talking to a
[15] psychiatrist, somebody admits to committing a crime, a
[16] misdemeanor, that may have no relevance to this case
[17] whatsoever, could be highly prejudicial. It is a case that has
[18] been through a deferred prosecution or some sort of alternative
[19] resolution and wiped from the records. That might not go to
[20] her credibility. But I can see an argument being made. And
[21] what my ruling allows for is for you to exercise your judgment
[22] and seek refuse from Judge Francis.
[23] MR. MEYERSON: Secondly, and this is again an inquiry,
[24] assuming that my client decides that she doesn't want to persue
[25] whatsoever emotional damage claims, and that the only claim she

Page 34

[1] will make is for the loss of her liberty and the violation of
[2] her rights, the damage claim, and I withdraw that claim
[3] formally and in every which way. I take it then the records
[4] become irrelevant?
[5] THE COURT: You are asking for an advisory opinion?
[6] MR. MEYERSON: No, I am asking, because there are
[7] three options, and the third option is to withdraw the lawsuit.
[8] I don't know what my client's answer is going to be.
[9] I never asked my client. But I wanted to make the arguments
[10] without me being affected that my client may elect to withdraw
[11] the case, because I think that it is punitive. I understand
[12] your ruling and you are not punitive.
[13] THE COURT: I -- you can do the research. If all she
[14] is going to claim is mere loss of liberty, you know, I haven't
[15] seen any cases that say one thing or another on it. But you
[16] can decide what you want to do. I hope she doesn't withdraw
[17] the whole case.
[18] MR. MEYERSON: I understand that. You are not going
[19] to rule on that. But on the issue --
[20] THE COURT: I couldn't possibly. I haven't thought
[21] about it, it's an advisory opinion, I understand why you asked
[22] for it. But I can't answer the question, Mr. Meyerson.
[23] MR. MEYERSON: Okay.
[24] MR. MIRRO: You raised an issue about in-camera review
[25] by Judge Francis of certain super sensitive records. And that

Page 3

[1] is an issue that, of course, came up in the MacNamara case.
[2] And we have that transcript. And there you described the type
[3] of records of being extraordinarily sensitive. I think the
[4] parties would benefit, Judge, from some clarification on what
[5] you mean.
[6] Here is my concern, Judge. We have a motion pending
[7] right now before Judge Francis, where one of the plaintiff's
[8] counsel is asking for Judge Francis to do a line-by-line review
[9] of psychological records, and to adopt certain redactions and
[10] so on. So the issue is going to be, the issue is very ripe
[11] before Judge Francis, I think it would be helpful if you could
[12] give some guidelines as to what you think --
[13] THE COURT: I think I just did by way of example. I
[14] can't do any better than what I have done.
[15] Again, you have to, from my standpoint, these have to
[16] be culled down the middle. The ruling that Mr. Meyerson got in
[17] his favor as to your client's work history, and the privileges
[18] and whatnot, if you had wanted to go to Judge Francis with
[19] something super or extremely sensitive, then you can make that
[20] application.
[21] But it is more a, you-will-know-it-when-you-see-it
[22] kind of thing. I can't give more direction. And, frankly, I
[23] would be more reluctant to because my involvement in discovery
[24] in this case is very different than Judge Francis's. He is in
[25] the weeds.

Page 36

[1] So for me to tell him, an excellent jurist, to use Mr.
[2] Meyerson's laudatory phrasing, somebody who is steeped in the
[3] facts of these cases, to tell him how to evaluate these things,
[4] would be folly.
[5] Look, I am going to assume, with good reason, the good
[6] faith of Mr. Meyerson. And, of course, going to assume that
[7] Judge Francis will give this an expedited and serious and
[8] thorough review. And to the extent people have a disagreement
[9] with how he's handled it, I am here six days a week
[10] MR. MIRRO: One other question. We have had
[11] opportunity to review the MacNamara transcript where you talk
[12] about the in-camera procedure. One of the things you said, I
[13] just want to know if you are still on board with this, that the
[14] in-camera procedure should only be employed where something is
[15] super or extraordinarily sensitive, and where, you said,
[16] irrelevant to the case.
[17] THE COURT: But that is the balancing. From Mr.
[18] Meyerson's standpoint, the example I gave about, in the course
[19] of meeting with a therapist, something got said that has
[20] nothing to do with the therapy, just comes up with the
[21] conversation. I am taking an extreme example. It arguably
[22] will not be -- it is not discoverable, or even if it is
[23] remotely relevant, and maybe there is some other reason to
[24] preclude it being turned over, what if, in the context of
[25] talking about her psychological past, she brings up a medical

Page 37

issue that has got nothing to do with this case, deeply personal medical issue, that has got nothing to do with this case, then Judge Francis could decide that the records will get turned over in redacted form. I can't give any more direction than that.

**MR. MIRRO:** My only concern is that if a patient is going to a psychotherapist or counselor or psychologist to deal with her emotional distress, presumably serious emotional distress, arising from something, whatever that something is, then my question becomes, gee, is that still an issue in this plaintiff's life, was it an issue at the time of her arrest.

**THE COURT:** When you get something that is redacted and you want to challenge it, you call me up and I will see you.

**MR. MEYERSON:** I take it that any records that are eventually turned over to the city will be turned over under protection?

**THE COURT:** Yes. Thank you, Mr. Meyerson.

**MR. MEYERSON:** And finally, I am not sure what I am going to do, and with all due respect to you, because I raised it in my submission, I am asking you to certify the issue, it is a very -- I am professionally and personally concerned about this issue. After 36 years, there are not too many issues that pound me, because you have seen it all. But this is kind of an issue that I think is a very, very important issue.

Page 38

**THE COURT:** You don't even have the records handy right now, so you are going -- it is going to take you some time to get the records, go over them with your client, and you can decide what you want to do. And you can let me know.

**MR. MEYERSON:** Thank you, your Honor.

**THE COURT:** I don't think there is any prejudice to defendants if, since Mr. Meyerson isn't sitting on the records anyway, I would, even if he were, I would give him some time to think it over.

I have been told many times by the city that you are overworked anyway, so you can work on other motions that are coming your way.

**MR. DOUGHERTY:** Your Honor, just one, finally. I just want to be clear that Mr. Meyerson turns over the records to Judge Francis, and he is not involved in any self-review or redaction prior to these being closed to the case. Plaintiff should not be involved in selective determination of relevance of their psychological records.

**THE COURT:** I think what Mr. Meyerson and I talked about is that he will turn them over, except to the extent there is something he would like Judge Francis to review and perhaps redact. So what you are talking about is Mr. Meyerson shows the documents to nobody, you or Judge Francis, that is not at all what we talked about.

**MR. DOUGHERTY:** I guess I just wanted some

Page 39

clarification.

**THE COURT:** He is going to turn over his client's mental history records. But he is going to look at them in their entirety and decide whether or not there are some things, some documents, some records within that bundle that he would like Judge Francis to say he doesn't have to turn over. And the rest of it he will turn over. He will turn it over if Judge Francis disagrees with him. So everything gets turned over unless Judge Francis says it doesn't.

**MR. DOUGHERTY:** Thank you, your Honor.

oOo

## 1

**18-year-old** 20:9

## 2

**2** 26:1
**20** 14:1
**2007** 3:9
**21** 5:14
**21-year-old** 5:15
**223** 26:19
**24** 7:9,9,18;14:10,14,22; 18:7;20:10,14;22:23
**24-year** 20:9;31:12
**24-year-old** 16:4;28:2
**25** 7:20;8:15,17,18;12:4
**26** 27:7,10

## 3

**35** 30:20
**36** 37:23

## 5

**5** 22:13
**58-H** 26:10

## 6

**65** 9:11

## 7

**71** 8:3
**72** 3:24;4:5;21:18;27:1
**74** 19:2;20:13
**74-year-old** 16:4

## A

**able** 18:11
**abuse** 3:24
**accept** 6:17;8:5
**accepted** 19:4
**access** 9:15;10:6,19; 15:25
**according** 18:20
**action** 4:22
**actions** 15:6;26:13
**activist** 5:16
**actually** 13:23;14:15,16; 21:1;26:17
**Actually** 5:12;9:22
**add** 23:3
**addition** 12:20;23:14; 27:23
**Additionally** 22:2
**admissible** 27:9
**admits** 33:15
**admitted** 11:14,15

**admonition** 6:18
**adopt** 35:9
**advisory** 34:5,21
**advocating** 24:24
**affected** 34:10
**affirming** 32:4
**afraid** 18:25
**afterwards** 25:23
**again** 9:8;11:24;33:23
**Again** 14:17;35:15
**against** 15:6
**ago** 4:10;11:13;13:11
**agree** 10:13;25:21
**agreed** 5:22
**agreeing** 3:2,17
**ahead** 7:2;16:9
**air** 7:21
**albeit** 3:20
**allegations** 31:20
**alleged** 9:18;31:6
**allegedly** 29:23
**alleges** 28:9
**alleging** 29:23;31:20
**allow** 31:25
**allowed** 22:18,25;29:9; 31:8
**allows** 33:21
**alluded** 24:16
**almost** 4:14;12:16,16; 14:11
**alternate** 29:9
**alternative** 24:17;33:18
**although** 17:19
**Although** 5:25
**amended** 16:24
**amount** 12:14;28:15; 29:11,21
**anguish** 22:14
**antithetical** 15:17
**antiwar** 19:17
**anxiety** 8:19;13:13;15:7; 28:7
**anxious** 7:20
**apologize** 5:9,11;17:19; 26:15
**appeal** 6:16;33:6
**appeals** 3:23
**appear** 32:11
**applicable** 27:16
**application** 30:23;35:20
**applies** 27:1
**apply** 22:3
**appreciate** 26:15
**arching** 16:11
**arguably** 3:1;36:21
**argue** 10:15;11:2
**arguing** 21:11
**argument** 17:17;19:4; 24:24;33:20
**arguments** 4:11;6:9; 10:13;19:11,12;23:13; 27:22;34:9
**arising** 37:9

**around** 5:19,19;15:18; 28:25
**arrest** 19:24;22:12,23; 24:18,18,21,25;22:37:11
**arrested** 7:10,16;13:7
**art** 12:22
**ascertainment** 27:12
**associated** 19:23
**assume** 17:5;27:5;36:5,6
**assuming** 28:23;33:24
**Assuming** 8:14
**assumption** 19:11
**attack** 12:24
**attempting** 11:10
**attended** 14:10
**attitude** 5:21
**attorney** 16:20
**authorities** 23:15
**authority** 25:6,11,11
**authorization** 32:23
**award** 8:17;28:14

## B

**back** 7:22;19:10;21:14; 22:24;23:1;27:2,3;31:8
**balancing** 36:17
**based** 23:16,22,24;28:15; 29:5
**basically** 7:17
**basis** 6:8;11:11;30:21
**become** 34:4
**becomes** 25:24;37:10
**behalf** 24:25
**beholder** 28:23
**benefit** 35:4
**better** 9:8;35:14
**beyond** 13:9
**bind** 25:12,14
**bit** 9:14
**blame** 28:4
**blanket** 20:18
**board** 36:13
**bootstrapping** 12:16
**both** 6:7;23:17,24;25:7; 28:3
**bounce** 8:9
**bound** 3:22;27:18,24
**Bridge** 26:18
**brief** 23:4
**briefly** 21:23
**bring** 26:12
**bringing** 11:18
**brings** 14:17;36:25
**broad** 7:6;20:22,22,24; 21:1,2
**brought** 15:6
**Buchwald** 10:5;30:10
**Buchwald's** 9:24
**buck** 6:12
**building** 3:10
**bunch** 12:19
**bundle** 39:5

## C

**call** 7:25;28:17;37:13
**called** 30:12,14,16,17
**came** 5:12;26:10;32:13; 35:1
**camera** 32:17;33:4
**can** 4:8;6:15;7:23;9:15; 12:5,22,24;16:20;18:6,6; 27:8,15;33:6,20;34:13,16; 35:19;38:4,4,11
**Can** 13:16
**careful** 3:10;9:13
**carefully** 17:19
**Carter** 10:23
**case** 3:18,20,22;4:4,13, 15,17,19;5:2,6;6:13;8:6,6; 10:10;11:4;12:19;18:9,17, 17;19:8,17:20:1,17;21:19; 22:3;23:21;25:13;26:19,24, 25;27:8,21,25;28:1,1,2,20; 30:6,10,10,12,14,16,17; 31:1,15;32:3;33:16,17; 34:11,17;35:1,24;36:16; 37:1,3;38:16
**cases** 4:15;6:11;17:12,15; 18:15,20;21:4;26:18;28:24; 29:13,15;30:4,6;34:15;36:3
**category** 30:1
**causation** 12:25;15:24; 22:18;24:11;25:2,20,20,22, 25;26:17;32:1
**cause** 8:9
**caused** 24:21;29:24
**causes** 24:17;29:9
**cavalier** 5:21
**ceased** 13:10
**certain** 12:13;27:13,14; 34:25;35:9
**certify** 37:21
**challenge** 37:13
**change** 29:22;31:9
**choice** 31:22
**circles** 13:15
**circuit** 7:4
**Circuit** 3:6;6:20,21;17:12; 25:15
**circumstances** 31:24
**citation** 23:25
**Citco** 21:24
**cite** 3:9
**cited** 12:20;26:18
**citing** 3:5;4:17
**city** 3:5;10:24;11:20; 19:18,25;22:17;26:1,5; 27:22;32:7;37:16;38:10
**City** 14:13
**city's** 30:6
**civil** 18:17;29:14
**claim** 8:9;9:16;10:1; 12:12;13:1;16:21,22;17:2, 3;28:24;29:4,11,17;31:2,

25;33:25;34:2,2,14
**claimed** 24:13;28:3;32:14
**claiming** 9:5;22:8;28:13; 29:2,16;31:15
**claims** 3:1;7:6;12:22; 13:12;27:14;29:1,7;30:3; 33:25
**clarification** 35:4;39:1
**clear** 22:15;27:17;30:19; 38:14
**clearly** 3:3;4:6;21:21,23; 23:20;24:9
**client** 5:14;7:8,9;8:11,14; 10:4;11:6;12:3;14:12;16:4, 5,23;17:2;19:18;20:3; 24:12,25;31:18,19;32:16, 20,23;33:24;34:9,10;38:3
**client's** 5:21;6:4;31:19; 34:8;35:17;39:2
**clinical** 8:2
**closed** 38:16
**collar** 3:11
**college** 31:15
**Colorado** 30:16
**comfort** 31:13
**coming** 6:5;38:12
**comment** 17:18
**commit** 13:21
**committed** 22:1
**committing** 33:15
**common** 15:18
**comparison** 19:16
**complaint** 12:5;14:25; 15:5;16:11,17,18,24,25; 22:10;28:3,8,12;29:20
**completely** 15:20
**complex** 10:1
**concedes** 18:2
**conceivable** 13:8;15:21
**concern** 35:6;37:6
**concerned** 37:22
**conclude** 10:5
**condition** 7:19,25;8:2,2; 21:9,10;26:6
**Conference** 3:8
**confined** 14:22
**confinement** 24:22
**confirm** 21:25
**conglomerate** 5:5
**Connecticut** 30:17
**connection** 10:3
**conservativebly** 27:8
**considered** 5:4;24:6; 26:25
**contemporaneously** 22:23
**context** 32:10;36:24
**contexts** 29:14
**continues** 28:9;29:20
**contrary** 3:3,24;4:6; 21:21;25:1
**conversation** 32:13; 36:21

conviction 21:25
Coopers 30:18
Corporation 30:16
co-therapist 32:22
counsel 4:12;24:23,23;
  26:21;35:8
counseling 7:12;11:16;
  19:20;26:11
counselling 7:13
counselor 32:21;37:7
country 9:23;15:18;28:25
couple 23:8
course 16:20;30:9;33:14;
  35:1;36:6,18
court 21:15
Court 3:7;21:24;22:4;
  23:24;24:15;25:13,14
COURT 3:8,13;4:9,23;5:1,
  7,11,17;6:25;7:2;8:3,8;9:4,
  20;10:9,15;11:21;12:7,9,
  11,18;13:12,17;14:4,25;
  15:3,5,13,17;16:13;17:6;
  18:13,20;19:1;20:16,23;
  21:1,6,12;23:5;25:17;27:1;
  32:8;33:1,6,14;34:5,13,20;
  35:13;36:17;37:12,18;38:1,
  6,19;39:2
courts 9:21,23,23;12:20;
  15:18;19:3
Courts 20:20
cracked 9:14
credibility 33:20
cried 20:4
crime 33:15
critical 6:17,18
crying 19:21
crystal 27:17
culled 35:16
custody 8:17;19:18;20:4

**D**

damage 7:6;13:13;33:25;
  34:2
damages 9:17;13:1;
  14:20;15:7,9,24;20:3;22:9,
  16,16,17;25:4;27:14,15;
  28:10,14,15,18;29:4,10,11,
  18,22;32:1,14
data 31:10
daughter 5:15;14:17
day 7:4;9:7;13:25;15:11,
  22:17;4;19:22;20:5
days 36:9
de 10:16;23:23,23;27:4,5;
  32:5
deal 37:7
dealing 25:21
dealt 26:24
debate 14:7,8;16:12,15
decide 13:20;34:16;37:3;
  38:4;39:4
decides 33:24

deciding 9:9
decision 3:6;5:6;6:19;
  9:25;19:7,12;20:2;23:16,
  24;24:5;25:7
decisions 16:3;25:14
deemed 27:15
deeply 37:1
defend 15:23
defendant 5:20;29:8;
  30:20,22;31:7
defendants 9:15;12:11,
  24;15:6,23;24:19;29:24;
  31:25;38:7
defendant's 18:15
defense 12:12;26:21
defer 19:10
deferred 4:16;33:18
defined 16:18
definite 21:25
definitely 3:14
definition 28:21
degree 10:7
delivered 32:24
demerit 3:5
demonstration 19:17
denies 8:4
depend 31:3
depends 20:17;31:1,1,2
deposed 26:8
deposition 14:13
depressed 7:13;13:7;
  18:24
depression 11:16;13:14;
  18:2;26:11
describe 29:15
described 8:4;28:18;35:2
describing 21:9
destruct 27:12
determination 22:5;
  23:22;24:4;38:17
determine 4:2
determined 4:3
developing 8:6
different 4:19;9:12;11:21;
  21:10;25:13;35:24
differential 6:8
dilemma 31:18
direct 26:7
direction 35:22;37:4
directly 19:16
disagreement 36:8
disagrees 39:8
discoverable 22:8;36:22
discovery 3:19,20;4:7;
  11:22;25:1;27:7,19;35:23
discretion 3:24;27:4
discrimination 18:17;
  29:14
discuss 29:13,13
discussion 18:13
disease 31:5
disfavors 27:11
disprove 11:9

distinction 18:15
distress 13:1,13;15:7;
  22:9,14,19;24:13,17,21;
  25:3;26:21;28:5;29:25;
  30:3;37:8,9
district 9:21,24;10:18,22;
  11:1;18:11;25:12;28:25
District 4:21;10:23;30:7,
  13,15,17
doc 13:8
doctor 28:8;32:13,14
doctrine 17:11
documents 38:23;39:5
done 29:23;35:14
door 9:14;29:8;30:11
Dougherty 3:13;23:19;
  24:10;25:19
DOUGHERTY 4:1,20,25;
  5:3;21:13;26:17;38:13,25;
  39:10
down 19:15;35:16
Dr 7:22,23
drafted 16:18
drafting 16:24
due 6:17;7:3;20:21;24:12;
  26:1;37:20
during 19:21

**E**

earlier 4:6;23:9
easily 17:14
Eastern 30:7,14
Eastman 26:18
effect 3:17;4:17,24;5:2
effects 22:11
eight 19:18,21
either 8:18;9:16;18:17;
  21:21;29:9;32:1
elect 34:10
elucidate 26:14
embarrassment 28:6
emotional 7:6,17,18;
  8:12,16,21;9:5;10:20;
  13:13;14:9;15:7,9,10,21;
  17:1,8;19:23;20:3;21:8;
  22:9,14,19;24:13,13,14,17,
  21;25:3;26:21;28:5,9;29:6,
  25;30:3;31:5;33:25;37:8,8
emphasize 23:11
employed 36:14
employment 18:17;29:14
encompassing 16:25
end 8:25;9:7
ended 3:2;9:1
endorsement 4:9
enlightening 14:15
enough 6:15;20:10
entirety 31:1;39:4
entitled 14:5,6;24:15;27:9
equating 14:9
erroneous 3:3;4:6;21:21,
  23

establish 22:2
evaluate 17:7;36:3
evaluation 32:13
evaporated 7:21
even 9:7,14;11:6,10;
  12:21;18:9;19:12;28:23;
  29:3;30:11;31:7;32:4,10,
  21;33:5;36:22;38:1,8
Even 9:5;31:5
event 10:21;12:25;17:1
events 10:2
eventually 37:16
everybody's 30:19
everyone 12:23
evidence 8:20;27:9
evidentiary 27:19
examination 10:25;11:9;
  18:23;30:20
examine 22:18;24:16
example 13:16,17;29:3;
  31:3;32:12,15;33:12;35:5;
  36:18,21
excellent 36:1
except 11:5;38:20
exercise 33:21
exist 13:10
expect 13:4
expedited 36:7
experience 14:16;28:22
expert 13:23;29:5,17
explained 18:6;25:13
explore 29:9
extent 5:20;9:17;12:20;
  15:24;16:17,22,23;19:22;
  26:5,12;29:1,2;31:2;36:8;
  38:20
extraordinarily 35:3;
  36:15
extreme 36:21
extremely 35:19
eye 28:23

**F**

fact 8:7,8;9:6;12:3;13:9;
  18:1,23;20:4;26:6;29:19,22
facts 5:5;7:8;8:7,7;19:5;
  23:17,24;26:7;27:21;36:3
factual 23:12,12;24:6
failed 16:23;21:20;22:2,3
failure 8:5
Fair 6:15
faith 36:6
false 19:23
family 7:11,12;11:16;
  20:5,11;26:11;32:21
far 12:22
fascinating 14:8
favor 35:17
fear 22:14;28:6
feel 27:18
feels 3:22
felt 4:9;8:19;27:24;29:6,6

fight 30:22
figured 10:1
file 6:16
filed 15:6
finally 37:19;38:13
Finally 26:5
find 13:4
fine 13:11;24:24
first 16:17;21:6,13;27:20;
  32:17
First 23:6,8
fish 11:5
five 11:13;13:7;22:24;
  23:1;31:8,11
five-point 3:5
five-year 16:6;31:7,11
flow 17:23
flows 17:1
focused 19:7
folly 36:4
forget 10:9;12:4
form 37:4
formally 34:3
forth 27:22
fortunate 20:8
found 28:25
four 7:16;13:10;22:24
Fox 30:16
frame 23:2
Francis 3:16,22;4:2,14;
  5:4,22;6:7;10:12;19:10,11;
  22:3;23:11,14,21;24:4;
  26:2;27:3,6,24;32:7,17,24;
  33:22;34:25;35:7,8,11,18;
  36:7;37:3;38:15,21,23;
  39:6,8,9
Francis's 3:3;21:21;
  23:10,16,16;32:4;35:24
frankly 35:22
fresh 7:21
freshman 19:19;20:9
front 7:4;11:18;24:3
further 31:8

**G**

garden 12:22;28:17,19,
  21,22,23;29:15;30:11
garden-variety 11:3
Gates 30:16
Gattegno 30:17
G-A-T-T-E-G-N-O 30:17
gave 36:18
gee 13:6;37:10
gets 3:5,18;7:16;16:2;
  29:22;39:8
giddiness 18:9
gives 28:20
goes 5:19;13:20;25:3;
  30:7
good 14:15;36:5,5
governed 4:6;21:15,17;
  22:5,10

governing 21:20
graduates 7:15
great 7:2
guess 26:9;32:25;38:25
guidelines 35:12

**H**

handled 36:9
handy 38:1
happen 13:8
happened 20:5;31:14
happens 5:15
harassment 26:24
harm 15:22
harmed 29:6
harms 15:9;17:11;29:24
health 6:4;7:19,25;9:11;
13:4,18,19;18:12,16;19:25;
21:10;27:15;29:10,17,24;
30:2;31:2,5,9,20
hear 3:14;12:18;17:20
hearing 26:10
helpful 15:14;35:11
herein 8:4
Hershey-Wilson 5:14
Hershey-Wilson's 22:7
high 7:11,15;9:11;11:13;
13:5,6;16:5;18:24;19:2,2;
20:11;31:14;32:20
highly 11:5;33:17
himself 6:8
history 9:10,11,16;13:14;
15:10;18:16;22:7,20;23:1;
24:14,15;30:2;31:3,9,21;
32:2;35:17;39:3
home 9:3
Honor 3:12;4:1;5:9,25;
6:16;8:19;17:17;18:3,10;
20:21;21:13;23:15;24:9,19;
26:15;38:5,13;39:10
Honor's 24:5
hope 34:16
hospital 13:20
hot 3:11
hours 7:18,20;8:15,17,18;
12:4;14:10,14;18:4,7;
19:18,21
humiliation 28:6
hundred 3:21
hurt 13:25

**I**

implicated 26:13
implications 6:2
implied 10:12
import 17:18;20:2;27:25
important 37:25
impression 27:20
impugn 32:16
in-camera 34:24;36:12,
14

incarcerated 17:3
incestuous 33:13
incident 8:4;25:23
including 25:14
inconsequential 16:16
independent 7:12
indicate 22:13
indicated 6:13;14:20
indicted 17:1
indignation 5:13
indulgence 26:16
inflicted 29:7
information 3:2;15:25;
26:14
injuries 9:5,17;28:16;
31:23
injury 8:12,16,22;9:18;
14:3;19:16,23;31:6
inner 18:22
inquire 26:21
inquiring 17:21
inquiry 17:23;33:23
insignificant 28:15
intend 29:3
interest 18:16
interesting 17:14
International 30:13
interpret 10:19
interrogatory 22:12,13;
28:4,12
interrupting 15:13;17:19
intervening 22:18;25:20,
22,25
into 7:24;11:5;12:4,16,16,
21;17:16;22:6;26:5,22;
31:8;32:2
intrinsic 14:11;18:7
inure 17:14
involuntarily 13:21;
14:23
involved 38:15,17
involvement 35:23
involves 31:21
irrelevant 15:20;34:4;
36:16
irrespective 17:25
issue 3:19;4:11;5:25;6:3;
12:2;22:8;24:9,10,10;
26:17;34:19,24;35:1,10,10;
37:1,2,10,11,21,23,25,25
issues 37:23

**J**

jail 7:18;8:15;9:1;12:4,6;
14:10,14;18:8
jerk 33:10
job 26:23
judge 4:21
Judge 3:2,15,19,21;4:2,
10,14,21;5:22;6:7,11,12,
14,21,25;9:24;10:11,14,23,
23,24;11:24;12:15;16:6;

19:10,11;20:12;21:21;22:3,
25;23:3,6,8,9,11,11,14,15,
16,18,21;24:4,7;25:5;26:2;
27:2,5,23;30:10,24;32:4,7,
17,24;33:22;34:25;35:4,6,
7,8,11,18,24;36:7;37:3;
38:15,21,23;39:6,8,9
judgment 33:11,21
Judicial 3:8
judicious 32:18
jurist 6:22,23;7:2;36:1
jury 8:17;11:18,18;17:7;
18:6,6;26:12;28:14;29:12

**K**

Karas 6:11,12,15
Kara's 4:11
Karas's 10:14;20:12
kept 5:15
kid 13:5,6;20:8
kind 9:7;28:18;35:22;
37:24
kinds 17:15;31:20
knee 13:22;14:3;19:16;
33:10
Kodak 26:19
Koeltl 6:21,25

**L**

language 24:1,2;26:19
largely 7:21;9:1
Larkinder 30:14
last 19:15;21:7;25:17
later 7:20
laudatory 36:2
law 3:4,25;4:4,7,14;5:5;
6:6,13;7:7;10:18,22;11:1;
12:2;16:14;17:10;18:11;
20:15;21:11,15,19,22;22:3;
23:17,24;27:10,11,13;30:7;
31:18,22
lawsuit 16:21;34:7
lead 27:9
leading 10:5
leads 17:23
least 5:22;18:19;26:22
leave 25:16
left 21:25
leg 13:25
legal 6:1,7:16;15:17;17:17;
23:14,22;25:11;27:22
length 31:3
level 4:7
liberal 27:7
liberty 8:18;14:10;18:7;
19:24;34:1,14
life 9:8;37:11
lightly 31:16
likely 5:3
limitation 16:6,7;31:7
limited 15:1

limiting 15:4;26:3
limits 15:14;16:1
Lindenal 21:24
line-by-line 35:8
list 30:5
listed 30:5
listened 17:18
litigation 7:24;11:17;20:2
little 9:14
lived 32:20
LLP 30:18
logic 10:25
look 6:8;11:1,7,7;12:6;
20:3;25:9;39:3
Look 36:5
loose 24:2
losers 27:3
loss 8:18;14:10;19:24;
34:1,14
lot 14:17;31:10
Louisiana 30:15
lucky 7:4

**M**

MacNamara 3:16;4:5;
5:1,6;6:6,19,24;7:6;9:14;
19:7;20:24;21:3;24:5;25:7;
26:3;27:18,23,25;32:9;
35:1;36:11
magistrate 9:25;11:7
Magistrate 3:19;4:21;5:4;
6:7;10:5,11;19:10,11;32:7,
24
Maine 7:23
majority 9:20,22
makes 27:14;30:22;31:11
making 13:2;22:5;23:13
man 14:12
manner 16:24
many 15:18;19:3;37:23;
38:10
material 10:7;11:5
materials 23:12
matter 6:14;21:2,11;26:4
matters 26:13;27:20
may 7:12;23:3;24:17;
28:11;29:21;31:3,4,17;
33:16;34:10
maybe 18:1;20:10,15;
22:24;36:23
Maybe 24:1
McKenna 22:25;30:9
mean 7:7;14:12;25:9;
30:25;35:5
means 30:20
medial 13:24
medical 27:14;31:21;
36:25;37:2
medication 7:14,15;
11:15;13:10
meeting 36:19
memo 4:9

meniscus 13:23,24
mental 6:4;7:19,25;9:11;
12:25;13:4,18;15:10,19,22;
18:12,16;19:25;21:10;
22:14;27:14;29:10,17,24;
30:2;31:2,9,20;32:2;39:3
mention 23:8
mentioned 16:10
mere 34:14
merely 10:20
merits 10:12;22:6
Meyerson 3:14,17,23;
5:8;10:13;15:5,13;16:13;
18:5;21:12,20;22:2;25:10,
17;26:18;28:5,11;31:16;
34:22;35:16;36:6;37:18;
38:7,14,19,22
MEYERSON 5:9,12,24;
7:1,3;8:5,10;9:19,22;10:11,
17;11:23;12:8,10,15;13:3,
16;14:3,5;15:2,4,12,16;
16:10,15;17:17;18:19,22;
19:9;20:20,24;21:4,8;
25:19;32:6,19;33:5,8,23;
34:6,18,23;37:15,19;38:5
Meyerson's 6:9;24:12;
36:2,18
Michigan 30:7
middle 13:21;35:16
might 3:10;6:9;10:13;
12:12;13:6,14;14:23;18:8,
8;19:3;23:23,23;28:17;
29:12;33:19
MIRRO 3:7,12;23:3,6;
34:24;36:10;37:6
misconduct 3:1
misdemeanor 33:16
Mississippi 30:13
mistake 22:1
moment 12:5
money 8:18;12:7,9,13;
13:24;22:16;24:12;31:23
more 9:25;19:16;28:18;
35:21,22,23;37:4
moreover 16:11;26:20
most 11:5;14:22
motion 4:5,8;22:5;35:6
motions 38:11
must 11:24;22:17
myself 14:20

**N**

name 32:21
narrow 5:25;6:3;12:2;
16:21
narrowed 17:2
narrowest 12:2
natural 7:17;17:4,6,22,23;
18:8
necessarily 4:23
need 18:3;21:14
needs 18:5

neither 20:1
New 14:13;17:10,12;22:17
next 19:22;20:5
nobody 38:23
nonclinical 8:2
nonconsolidated 4:22
none 30:19
nonsensical 12:17
nor 20:1
Northern 30:13
note 29:16
not-pleasant 14:23
notwithstanding 29:20
novo 10:16;23:23,23;
27:4,5;32:5
NPC 30:12
Number 26:1
NYU 19:19,20;20:9

**O**

oOo 39:13
objection 8:19
obligated 24:20,25;25:2
obtain 22:19
obviously 10:3;25:6,12
occurred 25:24
off 19:21;20:5
offended 11:19
offending 12:25
offense 6:25
old 5:14;7:9;19:2;20:9;
31:12
older 14:12
Once 9:14
one 3:20;12:23;16:11;
22:21;23:3;24:10;25:9,10;
26:18;28:12;34:15;35:7;
38:13
One 16:11;25:19;36:10,12
ones 12:20;30:5,5
only 5:18,21;19:1;24:7;
33:25;36:14;37:6
open 9:14;20:7;30:11
opens 29:7
opinion 6:10;34:5,21
opinions 3:9;25:15
opportunity 22:18;36:11
option 34:7
options 34:7
order 23:10,16;24:1,2;
33:9,9
ordinarily 11:25
ordinary 17:4,6,7
Ores 7:22
Orres 7:23
orthopedic 14:1
otherwise 24:2
ouch 13:22
out 4:10,10;5:12;7:20;9:1,
24;11:12,18;13:18,22;14:1;
22:22;26:10
outside 25:12

over 16:2;36:24;37:4,16,
16;38:3,9,14,20;39:2,6,7,7,
9
overrule 6:15,15
overruling 6:14
overturned 4:8
overworked 38:11
own 4:18;29:5

**P**

page 26:19
pain 13:25;29:6
paper 14:16,19
papers 4:2;30:6
Paragraph 8:3
part 5:4,14;19:4;26:22;
28:22;31:3
particular 27:21
parties 27:9;35:4
party 16:20
past 15:19;17:9;18:16;
26:22;36:25
patience 23:7
patient 37:6
peeked 32:2
pending 35:6
people 3:10;14:22;31:17,
20;36:8
people's 31:21
per 30:21
perhaps 38:22
Perhaps 13:6
period 16:8
permanent 8:1
permissible 10:20
person 13:21
personal 37:2
personally 37:22
person's 15:19;32:2
persuaded 27:24;28:24
persue 33:24
pervasive 24:5
philosophical 16:12;
31:17
Philosophical 16:15
philosophy 16:13;17:16
phrasing 36:2
physical 13:18
picture 22:19
Pitman 16:6;30:24
Pitman's 22:25
place 31:6
plaintiff 8:3;17:15;18:16;
24:16;26:20;27:13,15;28:3;
29:11,16,19
Plaintiff 38:16
plaintiff's 4:12;24:20,23;
25:2;26:22;31:9;35:7;
37:11
play 21:9;26:6
please 20:21
plenty 17:12

point 5:22;7:5;8:6;11:24;
14:22;19:3,15,16;21:23;
22:22;24:7,8;25:9,10;31:17
points 23:4,8
Portland 32:20
position 6:13;11:8;12:17;
20:21;21:5;31:19
possibility 29:8
possibly 34:20
potential 31:18
potentially 15:8;17:8
pound 37:24
practical 6:1,8
pre 6:4
precise 28:20
precisely 28:18;29:1;33:1
preclude 36:24
precluded 3:16;6:14;
19:13
precludes 4:11
precluding 26:4
preclusive 4:23;5:2
preexisting 25:20;26:6
prejudice 38:6
prejudicial 33:17
prelitigation 10:2,4
prelitigation-incident
6:5
prepare 12:12
prepared 31:24
presumably 28:4,15;37:8
pretend 15:19;30:1
pretty 3:11
previous 6:13
Price 30:18
principle 24:19;27:21
principles 23:22
prior 4:11;10:8,9;13:14;
14:1;38:16
privilege 5:21,23;6:4;
12:1,21;27:11;29:1;30:25
privileged 3:1;11:25
privileges 27:10,16;
35:17
probably 5:5;9:2;14:5,6
problem 10:11;32:16
procedure 21:16;36:12,
14
professionally 37:22
profound 6:1,1
prominently 10:2
proper 4:20
properly 31:25
prosecution 33:18
protection 37:17
prove 11:10;26:20
provision 27:7
psychiatric 11:13;31:4
psychiatrist 8:1;11:1,9;
18:3,5;32:22;33:15
psychiatrists 10:1
psychological 9:10,16;
17:11;22:7,14,19;23:1;

24:14;28:6;29:3,10;32:11;
35:9;36:25;38:18
psychologist 37:7
psychotherapist 37:7
pull 4:10;21:14
punitive 34:11,12
purely 23:22,22
purposes 3:19
put 7:24;9:9;12:4,5;13:18,
22;15:9,14;18:5;21:9;22:8;
25:10;26:5;27:22;31:17

**Q**

Quaker 14:12,15,16,18,19
quantify 29:4
Quick 3:13
quote 8:3

**R**

raised 4:12;34:24;37:20
Rather 9:25
rationale 4:3
reach 22:24
reached 23:1
reaction 7:17,18;8:16,22;
10:21;14:9,14;17:4;18:1,2,
8;21:8
read 12:19,19;18:20;
19:12;28:20;30:6
reading 10:14
reality 7:7
realize 6:21;21:14
really 11:2;25:10;32:14
reason 12:24;16:6;22:6;
24:14;36:5,23
reasonable 16:8;23:20
rebut 9:16;12:12;29:11;
31:25
recent 30:6
recently 6:20
recognize 17:13;18:15;
31:25
recognized 6:22;17:11;
30:24
recognizes 16:7;17:10;
27:10,13
record 6:4;7:24;8:20;
16:2;18:24;27:18;30:9
records 6:4;7:23;9:2;
10:6,19;11:5,11,24,25;
13:4;14:6;16:5,9;17:24,24,
25;19:3,25;20:14;22:22,24;
26:14;32:6,11,23;33:3,8,
19;34:3,25;35:3,9;37:3,15;
38:1,3,7,14,18;39:3,5
recover 31:23
redact 38:22
redacted 37:4,12
redaction 38:16
redactions 35:9
redressed 29:25

refer 4:18
referred 3:19
Refining 21:24
refuse 33:22
reject 21:4
relate 13:14
related 3:20;4:22;18:22;
20:5;26:23;27:14
relevance 10:7;13:9;
15:21;16:8;24:8;30:2;
33:16;38:17
relevant 10:6;12:24;13:9,
11;20:17,18;22:3,7,21,23;
24:15;27:8,8;31:15;32:14;
36:23
reluctant 35:23
rely 29:17
reminding 32:8
remotely 36:23
removed 19:1
reopen 21:3
reply 4:21
research 34:13
residual 9:5;22:11;28:9
resolution 33:19
respect 6:17;20:21,21;
25:3;26:1;37:20
response 10:17
responses 22:13;28:4
rest 39:7
restrained 18:7
result 9:7,18;22:11
results 24:13
revealed 31:22
reversed 7:1
review 3:15;10:15;22:4;
23:9,23;27:4,5;32:17;33:9;
34:24;35:8;36:8,11;38:21
reviewed 30:9,10;32:7;
33:4
reviewing 21:24
right 4:24;5:19;9:3,4;12:7;
18:14;19:7;26:21;30:25;
35:7;38:2
righteous 5:13
righteousness 5:10,11
rights 18:17;29:15;34:2
ripe 35:10
ripped 13:23
RNC 7:10,16
rule 18:18;20:18;21:17;
31:11;34:19
Rule 3:24;4:5;21:18;27:1,
7,9;30:20
ruled 3:7;6:10;20:23;26:2,
2;27:18
rules 21:15;25:1
ruling 3:16,20,22,23;4:4,
11,17,18;5:1,3,6;12:9,13;
10:8,9,14;20:12,22,22,25;
21:1,2,21;22:25;25:7;
27:23,24;30:21;32:4;33:21;
34:12;35:16

rulings 3:3;27:19,20

**S**

sad 7:20;8:23;14:24
sadness 8:19;18:9
same 10:18;15:8;23:2
saw 14:1
saying 4:14,18;5:13,17;
  8:10;10:20;17:20,21,25;
  18:25;20:16,17;26:19;
  29:19;31:11,12;33:3
scared 7:19;8:24;14:24
school 7:11;15:9;11:
  11:13;13:5,6;14:18;16:5;
  18:25;19:2,2;20:12;31:14;
  32:20
se 30:21
second 4:10
Second 3:6;6:20,21;
  17:11;25:15
Secondly 33:23
seeing 9:7
seek 29:12;33:22
seeking 7:24;15:7;22:9,
  15,22;25:7
seeks 26:20
seemingly 12:16
seems 4:14;10:12,19,22;
  12:15,23
selective 38:17
selectively 28:11
self-review 38:15
send 27:2;32:23
sense 15:18;20:14;27:2;
  31:12
sensitive 11:5;32:11;
  33:3;34:25;35:3,19;36:15
sensitivity 33:12
sent 6:11;20:11;32:7
sentence 28:12
serious 36:7;37:8
seven 19:18,21
several 18:4;24:16
sexual 26:24
show 9:2;21:20
showing 26:22
shows 38:23
shrink 20:10,11
Sidor 10:4;30:10
sighed 7:21
simply 10:8;12:3,5;17:3;
  19:13
sit 19:15
sitting 38:7
situation 3:18;14:23;
  20:12;23:18
situations 27:13
six 19:1;36:9
skull 17:10
slash 15:10,22
so-called 12:21,25
solely 24:21

somebody 9:2;13:12;
  15:22;29:2;30:3;31:4;
  33:15;36:2
Somebody 13:20
somebody's 30:2
somehow 30:1
someone's 15:10
sorry 15:16
sort 4:13;13:13;33:18
Sotomayor 10:23
sought 8:7,8;25:24;26:7;
  31:4,5
Southern 4:21
specifically 29:15,16
stand 8:11,14;17:1
standard 3:15;4:6,7;
  10:15;21:18,19,20;22:4;
  23:9,19,20;32:5
standards 15:20
standing 8:10
standpoint 35:15;36:18
State 17:12
statement 22:12
statutes 22:4
steeped 36:2
still 36:13;37:10
stop 9:4
strikes 15:17
struck 3:4
struggling 13:22
student 19:19
subject 23:23
subjected 11:9
submission 14:8;37:21
submit 4:1,4;23:18;24:3
submitted 23:15
subsequently 21:15
substance 25:5,11;26:2
substantiate 29:4,17
suffer 8:12;28:9;29:21
suffered 13:13;15:11,22;
  22:11,13;26:20;28:5;30:3;
  31:5
suffering 13:25;24:18;
  29:7
suggest 10:19,22;25:1
suggesting 33:2,13
suggests 22:10;24:1,2
suing 24:12
sum 8:18;25:5
super 32:11;33:12;34:25;
  35:19;36:15
supporting 25:6
Supreme 3:7
sure 37:19
Sure 25:17
surgeon 14:2
surprised 12:18
sworn 22:12
Synbios 30:15
S-Y-N-B-I-O-S 30:15

**T**

table 18:14
tailor 19:5
talk 10:9;30:4;36:11
talked 25:19;38:19,24
talking 33:14;36:25;38:22
taxpayers 22:17
temporal 16:3
term 12:22
terms 28:2;32:1
testify 12:4,6
testimony 13:23;29:5
therapist 7:13;9:6,8,12;
  36:19
therapy 6:5;7:16;10:4;
  13:10;36:20
thereafter 17:4
therefore 6:14;11:8;27:12
thin 17:10
thinking 5:15
third 34:7
thorough 36:8
though 7:22
thought 34:20
three 34:7
throughout 9:23,24
times 24:16;38:10
Title 26:24
today 23:7,13;24:16
told 38:10
took 7:20;31:6
tool 32:18
topic 33:12
totally 7:22
touch 10:13
toward 5:21
transcript 35:2;36:11
transcripts 4:4
trauma 17:1;22:14;28:6;
  29:3,10
treatment 8:7,8;11:13;
  25:24;26:7,10
trial 8:11;9:9
tried 14:8
triggers 6:3;10:21;12:1,3;
  20:6
true 27:22
truth 27:12
trying 15:3,8,9;19:6
turn 38:20;39:2,6,7,7
turned 16:2;36:24;37:4,
  16,16;39:8
turns 14:1;38:14
tweaking 5:18
two 16:10;17:4;23:3
type 35:2
types 31:23

**U**

ultimately 4:3;22:16

unaffected 27:21
under 3:11;20:12;21:18,
  19,19;22:25;31:24;33:9;
  37:16
Under 21:24
underpinnings 24:6
understandable 19:14
understands 24:9
unfortunate 20:10,12
unhappy 8:23
unless 17:8;24:5;39:9
unpublished 3:6,9
up 3:2;8:10;13:2;14:17;
  20:13,23;21:24;8:32:12,13;
  35:1;36:20,25;37:13
upon 29:7
upset 12:6;14:24;19:22;
  20:6
use 15:21;29:5;36:1
used 5:5
using 12:23;32:18

**V**

value 11:4,17,23;18:24
variety 12:22;28:17,19,
  21,22,24;29:14,15;30:11
versus 21:24;30:12,14,
  16,18
Victoria 30:14
view 7:6;9:20,22,23
views 10:1
VII 26:24
violation 34:1
visits 9:11

**W**

waive 19:12;29:1
waived 12:21;27:15;31:1
waiver 6:3;10:21;12:1;
  20:7;24:13
wall 15:9
wants 26:5;30:20
Waterhouse 30:18
way 9:20;18:10;30:19;
  34:3;35:13;38:12
wealth 25:6,11
weeds 35:25
week 36:9
whatnot 35:18
what's 11:6
whatsoever 33:17,25
whole 34:17
wide 29:13
Williams 30:12
wiped 33:19
wisdom 6:22,22
withdraw 8:13;16:21,21;
  17:2;28:11;34:2,7,10,16
within 16:7;17:12;31:10;
  39:5
without 15:24;34:10

witness 8:11,14
word 24:20;25:2,18
worded 14:25
work 35:17;38:11
working 23:2
worth 5:17
write 6:10
wrong 6:23;27:6;29:23
wrote 14:16,19

**Y**

years 5:14;7:9,16;11:13;
  13:7,11;14:1;19:1,2;22:24;
  23:1;31:8,11;37:23
yells 13:22
York 14:13;17:10,12;
  22:17
young 20:8
you-will-know-it-when-you-
  see-it
  35:21